WILLIAMS et al., Appellants v. BOOK et al., Respondents

(61 N. W.2d 290)

(File No. 9373. Opinion filed November 24, 1953)

Rehearing denied March 17, 1954

**M. T. Woods,** Sioux Falls, **M. Q. Sharpe,** Kennebec, for Plaintiffs and Appellants.

**Martens, Goldsmith & May,** Pierre, **George H. Taggert,** Timber Lake, for Intervenor and Respondent.

ROBERTS, P. J. The plaintiffs challenge the validity of Chapter 37, Laws of 1951, entitled "An Act Changing and Defining the Boundaries of Dewey County." This act required submission to the voters of Dewey County of the question of changing the boundaries of that county so as to include all the territory lying within the unorganized County of Armstrong. A majority vote was cast in favor of the proposed change. The act provides that if the boundaries are

changed as therein provided it shall be the duty of the officers of Stanley County to deliver all the books, records, accounts and property relating to the affairs of Armstrong County to the officers of Dewey County. Plaintiffs applied for a writ of prohibition commanding the defendant officers of Stanley County to refrain from taking further proceedings under the 1951 act. Dewey County was granted leave to file a complaint in intervention. Plaintiffs and defendants filed a joint answer to such complaint. This appeal is from the judgment for intervenor dismissing the alternative writ of prohibition.

Stanley County at the time of the passage of the act in question was one of the organized counties of the state. Armstrong County had never had a county organization. Pyatt County was attached at the Fourth Session of Legislature, Chapter 48, Laws 1895, to Stanley County for judicial and other purposes and at the same session, Chapter 52, Laws 1895, the name of the County of Pyatt was changed to Armstrong County.

It is claimed that the act in question contravenes the provisions of Section 1, Art. IX, of the state constitution, which reads as follows:

"The legislature shall provide by general law for organizing new counties, locating the county seats thereof and changing county lines; but no new county shall be organized so as to include an area of less than twenty-four congressional townships, as near as may be without dividing a township or fractional township, nor shall the boundaries of any organized county be changed so as to reduce the same to a less area than above specified. All changes in county boundaries in counties already organized, before taking effect, shall be submitted to the electors of the county or counties to be affected thereby, at the next general election thereafter and be adopted by a majority of the votes cast in each county at such election. Counties now organized shall remain as they are unless changed according to the above provisions."

It is also contended that the act is not a general law upon the subject of county boundaries and is in violation of Section 23, Art. III, of the constitution. This section after specifying certain subjects including "changing the names of persons or places" and "regulating county and township affairs" declares that in "all other cases where a general law can be [made] applicable" a special statute shall not be enacted.

■ ■ The power of the legislature over counties in the absence of limitations placed upon it by the constitution is plenary and supreme. Schomer v. Scott, 65 S.D. 353, 274 N.W. 556. The constitution, Section 1, Art. IX, recognizes a distinction between organized and unorganized counties. As to the former, the boundaries cannot be changed except by a majority vote of the electors in each of the counties affected. If a change of boundary affects two or more organized counties the change must be agreed to by a majority of the votes cast in each county. The constitution makes no provision, however, for submitting the question of a proposed change of boundary to the voters or residents of an unorganized county. Stuart v. Kirley, 12 S.D. 245, 81 N.W. 147, 148, was an action to enjoin the submission to the voters of Stanley County of the question to include territories lying within three unorganized counties. Sustaining the constitutionality of a statute substantially identical, including the title, with the provisions of the act under consideration, this Court said:

> "The only organized county affected by the act we are considering is Stanley county, and it is that county alone that is to be affected by the change. * * * Such an unorganized county cannot be said to be affected by changes in county lines made in an organized county, although a part or all of such unorganized county, is included within the county lines of the organized county as changed. When, therefore, it speaks of the county or counties to be affected thereby, it includes only organized counties."

It is claimed that there has been a complete change in the political status of unorganized counties. It is not neces-

sary to discuss the numerous statutes conferring powers upon unorganized counties that are appropriate to an existing body politic. They do not purport to provide for the formation or creation of new counties within the contemplation of the constitution, but in fact recognize the continuous existence of unorganized counties and so far as questions now under consideration are concerned the political status of Armstrong County was that of an unorganized county.

■ To the objection that the act there under consideration was in conflict with the constitutional prohibition against special statutes, this Court in the Stuart v. Kirley case said:

"The general provision at the close of that section that 'in all cases where a general law can be applicable no special law shall be enacted' is designed as a guide to the legislature, and that body must itself determine whether or not a general law can be made applicable to the subject."

It is contended that this interpretation founded on a misquotation of Section 23, Art. III, of the constitution, is not sound and should be overruled. This section as we have indicated after inhibiting special legislation in certain enumerated cases provides that "in all **other** cases where a general law can be applicable no special law shall be enacted." We are unable to agree with counsel that because of the omission of the word "other" in the interpretation of this section of the constitution the court concluded that whether an act relating to an enumerated subject can or cannot be made a general law is a question for legislative determination. It was not contended in that case that the subject matter of the statute was within an enumerated class. This decision was referred to with approval in Viland v. Board of Education, 37 S.D. 412, 158 N.W. 906. And the subject matter of the statute there under consideration was not within a class specifically mentioned. We think that where the validity of a statute is challenged on the ground that it is a special and not a general law within any one of the eleven classes enumerated in the section under consideration, the determination of the question is for the courts and not the legislature. 16

C.J.S., Constitutional Law, § 153; see also Annotations in 12 Am.St.Rep. 716, and 93 Am.St.Rep. 106.

 This brings us to a consideration of the claim of counsel that the 1951 act conflicts with the specific prohibitions against special laws "changing the names of persons or places" and "regulating county and township affairs". In Stuart v. Kirley, supra, referring to the provisions of Section 1, Art. IX, of the constitution, this Court said:

"It will be observed that this section, in effect, provides for two classes of cases. In the first part provision is made for organizing new counties, locating the county seats thereof, changing county lines, and defining the area of such new counties, and prohibiting the legislature from changing the boundaries of organized counties so as to reduce the same to a less area than therein specified. The second part of the section refers to changes in county boundaries in counties already organized, and provides that, before taking effect, such changes shall be submitted to the electors of the county or counties to be affected thereby."

The legislature under this section has power to create new counties "by general law". The creation of new counties and the changing of boundaries of counties already in existence are distinctly different. Wheeler v. Herbert, 152 Cal. 224, 92 P. 353. A change of boundaries of counties already organized does not affect or change the organization of the counties concerned. It does not create a new political subdivision. The terms of the 1951 act relate to change of boundaries and provide a procedure for its accomplishment in the event of an affirmative vote on the question submitted thereunder. The statute does not extend its operation beyond the time when a change of boundary has been completed. The part of this section providing for change of boundaries of existing counties does not contain the limitation of the preceding part with respect to enactment by general law and this clearly implies that there may be cases where a special law may be appropriate in providing for such change of boundaries. As to prohibitions specifically enumerated in Section 23, Art. III,

they do not apply to special laws enacted under the authority of other constitutional provisions. We do not think that the statute is invalid as violating the mandate of the constitution against the enactment of special laws.

█ It is further contended that because Dewey County had a bonded indebtedness, Section 4, Art. XIII, of the constitution, prohibited the annexation of Armstrong County without a majority vote of its electors in favor of the change. This section of the constitution as originally adopted fixed a debt limit of 5% upon the assessed valuation of the taxable property within a county or other subdivision. This section was amended in 1896 and again in 1902. The present section as thus amended reads as follows:

"§ 4. The debt of any county, city, town, school district, civil township or other subdivision, shall never exceed five (5) per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred. In estimating the amount of the indebtedness which a municipality or subdivision may incur, the amount of indebtedness cantracted prior to the adoption of the constitution shall be included;

"Provided, that any county, municipal corporation, civil township, district, or other subdivision may incur an additional indebtedness, not exceeding ten per centum upon the assessed valuation of the taxable property therein, for the year preceding that in which said indebtedness is incurred, for the purpose of providing water and sewerage, for irrigation, domestic uses, sewerage and other purposes; and

"Provided, further, that in a city where the population is eight thousand or more, such city may incur an indebtedness not exceeding eight per centum upon the assessed valuation of the taxable property therein for the year next preceding that in which said indebtedness is incurred for the purpose of constructing street railways, electric lights or other lighting plants.

"Provided, further, that no county, municipal corporation, civil township, district or subdivision shall be included within such district or subdivision without a majority vote in favor thereof of the electors of the county, municipal corporation, civil township, district or other subdivision, as the case may be, which is proposed to be included therein, and no such debt shall ever be incurred for any of the purposes in this section provided, unless authorized by a vote in favor thereof by a majority of the electors of such county, municipal corporation, civil township, district or subdivision incurring the same."

In Spangler v. City of Mitchell, 35 S.D. 335, 152 N.W. 339, it was held that the third proviso in this section is a limitation upon the exercise of authority conferred by the preceding provisos. The question in Nelson v. Lembcke, 43 S.D. 207, 178 N.W. 981, was whether an attempted consolidation of school districts was void because a vote was not taken separately in the districts. This Court again rejected the contention that the requirement of a majority vote in the third proviso relates back to the first sentence of this section. The bonded indebtedness of Dewey County was not created for any purpose named in the provisos and this section of the constitution did not require submission of the question of annexation to the voters of the unorganized county.

■ ■ Plaintiffs argue that the legislature in authorizing the annexation has ipso facto vested the funds and properties of Armstrong County in the consolidated unit without the consent of its electors; that the result of such legislative action is to permit the taxation of citizens and taxpayers of Armstrong County for the use and benefit of another county; and that the 1951 act is therefore in violation of the due process provisions of the federal and state constitutions. The power of the legislature in the control of counties and other political subdivisions is unrestrained by requirements of due process. Risty v. Great Northern R. Co., 270 U.S. 378, 46 S.Ct. 236, 70 L.Ed. 641; Rein v. Johnson, 149 Neb. 67, 30 N.W.2d 548; Driskel v. O'Connor, 339 Pa. 556, 15 A.2d 366;

Town of Brighton v. Town of Charleston, 114 Vt. 316, 44 A.2d 628; Independent Consol. School Dist. No. 7 v. Bowen, 199 Okl. 92, 183 P.2d 251. In Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 46, 52 L.Ed. 151, the Court answered the contention that taxpayers of a municipality could not be taxed for the benefit of a municipality with which it may be consolidated in this way:

> "The state, * * * may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States."

It appears from these decisions and authorities cited therein that the funds of a political subdivision held in a public or governmental capacity are as related to due process within the control of the legislature and that the contention of plaintiffs is without merit.

 The act in question is claimed to be unconstitutional because its subject is not expressed in the title as required by Section 21, Art. III, of the constitution. This section has been construed in so many cases beginning with State v. Morgan, 2 S.D. 32, 48 N.W. 314, and ending with Mettet v. City of Yankton, 71 S.D. 435, 25 N.W.2d 460, that we need only state that the provisions of the act relate and are germane to the purpose of changing and defining the boundaries of Dewey County as expressed in the title and do not as we have indicated extend beyond the full accomplishment of such purpose. A title employing the same words was considered in the Stuart case and the question of its validity was answered in the affirmative. That precedent was followed in Davenport v. Elrod, 20 S.D. 567, 107 N.W. 833, and Morrow v. Wipf, 22 S.D. 146, 115 N.W. 1121. We do

not think that the holding in that case is inconsistent as contended by counsel with later decisions considering the validity of titles.

We have finally to consider whether or not Dewey County had such interest as entitled it to intervene. SDC 33.0413 provides that "Upon timely application before trial, anyone shall be permitted to intervene in an action or proceeding who has an interest in the matter in litigation, in the success of either party, or an interest against both". The 1951 act purports to change and define the boundaries of Dewey County. It must be conceded as counsel contend that Dewey County had no proprietary interest in the attached territory. In the case of People ex rel. v. District Court, 66 Colo. 40, 179 P. 875, 876, a county commenced an action to settle and determine a boundary line, and in discussing the interest of the county in the controversy the Court said:

> "A county has an interest, and a form of a right, in the property within its boundaries. The boundary affects the rights of the counties; the rights of the people therein, and property rights within the territory; the rights of the respective counties for purposes of taxation; the rights of the county to ownership and possession of, and control over, roads and highways within the territory; and the jurisdiction of courts over the trial of actions."

We think that Dewey County had an interest within the intent of Section 33.0413 and a right to intervene.

Judgment appealed from is affirmed.

All the Judges concur.