COUNTY OF TRIPP, South Dakota, a political subdivision of the State of South Dakota, Warren Sealy, Wesley Frantz, and Don Mason, Individually and as Commissioners of Tripp County, Plaintiffs and Appellants,

v.

STATE of South Dakota, Richard F. Kneip, Governor, Lorna Herseth, Secretary of State, William J. Janklow, Attorney General, and Shirley Briggs, County Auditor of Tripp County, Defendants and Respondents,

and

Clayton "Bud" Haley and Anita Remerowski, Defendant-Intervenors and Respondents,

and

Marlow Newman, Intervenor.

No. 12268.

Supreme Court of South Dakota.

Argued June 6, 1977.

Decided March 27, 1978.

Rehearing Denied May 1, 1978.

Tom D. Tobin and Earl R. Mettler, Winner, for plaintiffs and appellants.

Doyle D. Estes, Asst. Atty. Gen., Pierre, for defendants and respondents; William J. Janklow, Atty. Gen., Pierre, on brief.

John J. Simpson, Winner, Terry Pechota, Mission, for defendant-intervenors and respondents.

John W. Grieves, Winner, for intervenor Marlow Newman.

PORTER, Justice.

## CASE SUMMARY

This is an appeal from a judgment of the circuit court declaring the attachment of the unorganized county of Todd to the organized county of Tripp for administration of governmental and fiscal affairs pursuant to SDCL 7–17–1 constitutional. The appellants (County of Tripp and the Board of Commissioners of Tripp County) contend that SDCL 7–17–1 denies them due process, equal protection, and their right to a free and equal election as guaranteed by the

South Dakota Constitution. S.D.Const., Art. VI, § 2, Art. VI, § 26, and Art. VI, § 19. They argue that Tripp and Todd Counties have been consolidated without the consent of their residents in contravention of Article IX, § 1 of the South Dakota Constitution, and that the trial court erred in holding that the issue of whether Tripp and Todd Counties should be severed is a political one, which is properly left within the cognizance of the South Dakota Legislature. We find no merit in appellants' assignment of error, and therefore affirm the portion of the judgment of the trial court declaring SDCL 7–17–1 constitutional.

## FACTS

In 1929 the South Dakota Legislature attached the unorganized county of Todd to the organized county of Tripp for administration of governmental and fiscal affairs including all state, county, judicial, taxation, election, recording, canvassing, and foreclosure purposes, pursuant to SDCL 7–17–1.[1] Although the county officers of Tripp County have all of the jurisdiction, rights, powers, duties, and liabilities for the administration of the affairs of Todd County, under SDCL 12–23–2[2] the residents of Todd County were not allowed to vote for the Tripp County officers. In 1975, however, the United States Court of Appeals for the Eighth Circuit ruled that Todd County electors must be allowed to vote in Tripp County elections. *Little Thunder v. Kneip*, 518 F.2d 1253 (8th Cir. 1975). Shortly before primary and general elections in Tripp County the federal district court en-

---

1. SDCL 7–17–1 provides:

 The unorganized county of Shannon is attached to the county of Fall River, the unorganized county of Washabaugh is attached to the county of Jackson, and the unorganized county of Todd is attached to the county of Tripp, for administration of governmental and fiscal affairs, including all state, county, judicial, taxation, election, recording, canvassing, and foreclosure purposes, excepting in cases where the administration of any of said affairs is expressly otherwise provided by law.

2. SDCL 12–23–2 provides:

 The county auditor of the county to which any unorganized county is attached shall at every state and national election held within this state provide printed ballots for each voting precinct in such unorganized county, in the same manner as for the voting precincts in the organized county; except that such ballots shall contain the names of candidates for state, national, and local officers of the unorganized county offices only, and only such questions as are submitted to the electors of the whole state.

tered an order implementing that decision. Prior to those elections the appellants in this case sought to enjoin the participation of Todd County residents in the Tripp County elections. The trial court ordered that Todd County residents be allowed to vote in the elections, but that election officials keep separate totals for votes cast from each county. Intervenor Clayton "Bud" Haley was elected county commissioner for the third district by a combination of Tripp and Todd County voters. His opponent Marlow Newman would have been elected to that office, however, if only the Tripp County votes cast were counted.

This appeal stems from a trial on December 17, 1976, in which the appellants alleged the unconstitutionality of SDCL 7–17–1. Subsequently, the trial court issued a memorandum decision holding SDCL 7–17–1 constitutional and refusing to sever Todd County from Tripp County. The court also ordered that the Tripp County Auditor be directed to certify Clayton Haley as the county commissioner from the third district, notwithstanding the unconstitutionality of the process by which the election took place. A judgment was entered accordingly on February 11, 1977, to which appellants assign several errors. We affirm the portion of the judgment of the trial court declaring SDCL 7–17–1 constitutional.

## ISSUES

This appeal presents the following issues:

*Issue One*—Does SDCL 7–17–1 deprive Tripp County residents of their property without due process of law as guaranteed by the South Dakota Constitution, Article VI, Section 2?[3]

*Issue Two*—Does SDCL 7–17–1 deny Tripp County residents equal protection as guaranteed by the South Dakota Constitution, Article VI, Section 26?[4]

*Issue Three*—Does SDCL 7–17–1 deny residents of Tripp County their right to a free and equal election as guaranteed by the South Dakota Constitution, Article VI, Section 19?[5]

*Issue Four*—Did SDCL 7–17–1 unconstitutionally consolidate Tripp and Todd Counties without the consent of the residents therein as required by the South Dakota Constitution, Article IX, Section 1?[6]

*Issue Five*—Is the issue of severance of Tripp and Todd Counties a political one, which is properly left within the cognizance of the South Dakota Legislature?

## DECISION

*Issue One*

■ Appellants allege that SDCL 7–17–1 deprives Tripp County residents of their property without due process of law by requiring them to provide to an adjacent county services for which they do not receive adequate compensation. The basis for this assertion is that SDCL 7–17–9,[7] 7–17–

3. Article VI, Section 2 of the South Dakota Constitution provides:
 No person shall be deprived of life, liberty or property without due process of law. . .

4. Article VI, Section 26 of the South Dakota Constitution provides:
 All political power is inherent in the people, and all free government is founded on their authority, and is instituted for their equal protection and benefit . . .. And the state of South Dakota is an inseparable part of the American Union and the Constitution of the United States is the supreme law of the land.

5. Article VI, Section 19 of the South Dakota Constitution provides:
 Elections shall be free and equal, and no power, civil or military, shall at any time

interfere to prevent the free exercise of the right of suffrage. . . .

6. Article IX, Section 1 of the South Dakota Constitution provides:
 The Legislature shall have plenary powers to organize and classify units of local government, except that any proposed change in county boundaries shall be submitted to the voters of each affected county at an election and be approved by a majority of those voting thereon in each county. . . .

7. SDCL 7–17–9 provides:
 The county commissioners may provide for the employment of clerical assistance for any of the county officers when such assistance shall be necessary to perform the additional duties required in administration of the affairs of said unorganized county. No sum in excess of twelve thousand dollars per year

11,[8] and 7–7–13 [9] limit the amount of taxes that can be collected from Todd County by Tripp County for administrative costs and the amount of money that can be paid in salaries to the officials who perform certain administrative tasks. We hold that the due process clause does not limit the power of the legislature in this instance. In *Williams v. Book*, 75 S.D. 173, 181–82, 61 N.W.2d 290, 294 (1953), this court said:

> The power of the legislature in the control of counties and other political subdivisions is unrestrained by requirements of due process. [Citations omitted.] In *Hunter v. Pittsburgh*, 207 U.S. 161, 28 S.Ct. 40, 46, 52 L.Ed. 151, the Court answered the contention that taxpayers of a municipality could not be taxed for the benefit of a municipality with which it may be consolidated in this way:
>
> > "The state, * * * may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States."

Similarly, questions of public policy, convenience, and welfare related to any change in county boundaries are of purely legislative cognizance and any action in regard thereto does not come within the due process clauses of either the state or federal constitutions. *Syfie v. Tri-County Hospital District*, 186 Neb. 478, 184 N.W.2d 398, 403 (1971). Although such legislative actions might sometimes work hardships on certain citizens, the legislature's exercise of its plenary power over counties through attachment is not limited by due process. The attachment of Todd County to Tripp County might cause residents inconvenience, but the statutory scheme is still a valid exercise of legislative authority. *See Hunter v. Pittsburgh*, 207 U.S. 161, 179, 28 S.Ct. 40, 46, 52 L.Ed. 151, 159 (1907). We hold, therefore, that SDCL 7–17–1 does not violate appellants' rights to due process under the South Dakota Constitution.

*Issue Two*

Appellants base their allegation of a violation of the equal protection clause of the South Dakota Constitution on the inadequate compensation to Tripp County for services provided to Todd County, which additional expense is not borne by residents of any other county or by residents of the state at large. The only possible merit to this argument stems from this allegation by

---

shall be expended for clerical help for any unorganized county. The compensation of clerical help provided under this section shall be paid by the unorganized county for which said clerical help is employed.

**8.** SDCL 7–17–11 provides:

The county commissioners of the organized county to which any unorganized county is attached shall have jurisdiction to provide for the levy and collection of taxes upon and from the property within the unorganized county sufficient to administer the affairs of said unorganized county for all of the purposes provided for in this chapter, in the manner and under the limitations prescribed by law, and for the same purposes as taxes are levied and collected for organized counties, excepting in cases where levy is committed to the highway board or the district school board.

**9.** SDCL 7–7–13 provides:

County treasurers, county registers of deeds, state's attorneys and county auditors shall each receive, as compensation for all work incumbent upon them as such officers acting for the unorganized counties, in addition to their salaries as officers of organized counties, the sum of one thousand five hundred dollars per annum each for each unorganized county for which they perform such services, such compensation to be paid from the funds of such unorganized county. Provided, however, that in unorganized counties having a population of two thousand or more, the officers shall receive the sum of two thousand two hundred dollars, and in addition thereto for each one thousand of population or major fraction thereof in excess of the two thousand in population, the sum of seventy-five dollars per thousand.

the appellants as individuals, because the equal protection clause relates to equality between persons rather than between areas. *State v. Smith*, S.D., 216 N.W.2d 149 (1974).

Equal protection demands that there be a rational basis for differing treatment of people by state statute. *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961). Appellants argue that there is no rational basis for the attachment of an unorganized county to an organized county, or for the attachment of Todd County to Tripp County rather than to another adjacent county, and that SDCL 7–17–1 unconstitutionally treats Tripp County residents differently from Todd County residents. It is well recognized that state legislatures have the power to attach unorganized counties to organized counties for special purposes subject only to constitutional limitations. *Parish of Caddo v. Parish of Bossier*, 164 La. 378, 113 So. 882 (1927). The object of the attachment statute under attack here is to provide for the administration of governmental and fiscal affairs of Todd County. The attachment of Todd County to Tripp County is obviously reasonably related to that object and is indeed a rational solution to the problem of administration of Todd County. This solution need not be the only alternative to be constitutional, but rather it must merely be a reasonable alternative. *See W. S. Butterfield Theatres v. Department of Revenue*, 353 Mich. 345, 91 N.W.2d 269 (1958). The attachment of these counties was a rational way to provide an effective system of county government for an unorganized county. The test is not whether there is a rational basis for the attachment of Todd County to Tripp County rather than to another *adjacent* county, but instead whether there is a rational basis for the attachment of Todd County to Tripp County rather than any other county in the state. The fact that Tripp County is adjacent to Todd County is the rational basis for the attachment. If the attachment itself is constitutional, as we concluded above, we can conceive of no attachment more logical than that of an unorganized county to an adjacent organized county.

Finally, SDCL 7–17–1 does not unconstitutionally treat Tripp County residents differently from Todd County residents in violation of equal protection. One who attacks a statute, alleging unconstitutionality, must prove its invalidity beyond a reasonable doubt; if any reasonable basis may be conceived which supports the statute, it will be upheld, and the challenger must negate all possible bases. *Board of Ed. of Com. Sch. D. v. Board of Ed. of Hardin Co.*, 260 Iowa 217, 149 N.W.2d 187 (1967). All presumptions are indulged in favor of constitutionality. *Berens v. Chicago, Milwaukee, St. Paul & Pacific R. Co.*, 80 S.D. 168, 120 N.W.2d 565 (1962). Appellants argue that with respect to taxation Todd County residents are not taxed at all for some services and are taxed only to a limited extent for others, while Tripp County residents are subject to taxation for all government services. Tripp County provides no services for Todd County residents which it does not provide for Tripp County residents. The Tripp County officers perform the same functions for Tripp and Todd Counties. Additionally, Tripp County has the power to tax Todd County residents to meet administrative expenses incurred as a result of the attachment. SDCL 7–17–11. "A county is a public corporation, which exists only for public purposes connected with the administration of the state government, and it and its revenues are alike, where no express restriction is found to the contrary, subject to legislative control. . . That certain territory may be a part of a county for some purposes, but not for all, is well settled." *Slutts v. Dana,* 138 Iowa 244, 115 N.W. 1115 (1908). Even if it is assumed that the residents of these two counties are treated differently for taxation purposes, such unequal treatment would not be unconstitutional. In this case all residents of Tripp County are being taxed at the same rate. Our constitution does not require that residents of one county be taxed at the same rate as residents of all other counties. In addition to the fact that the Tripp County commissioners have the authority to provide for the levy and collection of taxes from Todd County sufficient to administer the affairs of Todd County, the maximum

mill rates vary between counties, just as their assessed valuations vary. SDCL 10–12–21.[10] As we stated earlier, there is no prohibition against legislation which is limited as to the territory within which it is to operate. *State v. Smith,* S.D., 216 N.W.2d 149 (1974). In this case, however, we need not analyze the constitutionality of unequal tax burdens. The record indicates that Tripp County has not been taxing Todd County at the maximum rate allowed by statute. We cannot allow Tripp County to complain of inadequate compensation when it is not collecting all of the compensation to which it is entitled. The complaint of disparate treatment seems to focus upon the restrictions set forth in SDCL 7–7–13 and 7–17–9, which deal with maximum expenditures for Todd County clerical assistance and limitations on salaries. We do not agree that because of the limitations imposed the attachment statute is unconstitutional. If Tripp County opposes the limitations placed upon its expenditures for Todd County, it must seek relief from the legislature, rather than this request to invalidate the entire attachment scheme. We hold, therefore, that SDCL 7–17–1 does not violate appellants' right to equal protection under the South Dakota Constitution.

*Issue Three*

Appellants allege that SDCL 7–17–1 denies residents of Tripp County their right to a free and equal election and equal protection in violation of the South Dakota Constitution. They argue that because of the decision in *Little Thunder v. Kneip,* 518 F.2d 1253 (8th Cir. 1975), requiring that Todd County voters be allowed to participate in Tripp County elections, the votes of Tripp County residents will be diluted by being counted with the votes of Todd County residents. Tripp County presently has three county commissioners who are elected from three districts. As a result of the *Little Thunder* decision, all Todd County voters were allowed to vote for candidates from all three Tripp County districts, whereas Tripp County voters were only allowed to vote for candidates from their own districts. Appellants contend that this process in effect disenfranchises Tripp County residents who are excluded from participation in the election of two of their three county commissioners, which violates the "one person, one vote" doctrine. *See Bailey v. Jones,* 81 S.D. 617, 139 N.W.2d 385 (1966). They argue that the disenfranchisement should be strictly scrutinized, and that there is no compelling state interest justifying it. The trial court, on the other hand, concluded that the strict scrutiny test is not applicable when construing the equal election provision of the South Dakota Constitution.

We find it unnecessary to determine whether the strict scrutiny test is applicable in this case because we conclude that the election process under attack does not even pass the traditional equal protection test. By allowing Todd County residents to vote for all three county commissioners, the election process in effect imposes unconstitutional geographic limits on the franchise. As the United States Supreme Court stated in *Reynolds v. Sims,* 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed.2d 506, 523 (1964), "the right of suffrage can be denied by . . . dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." There is no rational basis, much less a compelling state interest, for the requirement that voters reside in Todd County in order to vote for all three commissioners. The election process under attack is unconstitutional. The appellants, however, are alleging that because of the violation of their right to a free and equal election, SDCL 7–17–1 is unconstitutional, which simply does not follow. The attachment of the two counties is not operating to deprive Tripp County voters of their right to a free and equal election, but rather the unconstitutionality results from the districting of the two counties. This problem can be solved without severing the two counties. Redistricting would be the simplest solution. The trial court, therefore, re-

---

10. SDCL 10–12–21 provides the maximum mill levy for counties pursuant to their assessed valuations.

tained jurisdiction and ordered that if the legislature failed to remedy the situation or if the federal district court refused to modify its order the parties could return to that court for appropriate equitable relief. In 1977 the legislature remedied the situation when it passed House Bill 908, 1977 South Dakota Session Laws, Ch. 60, p. 98 [now SDCL 7–8–2.1], which provides as follows:

In any organized county that has an unorganized county attached, the board of county commissioners shall be reapportioned, if elected from districts, by treating the organized county and unorganized county as a single unit and allocating the county commissioner districts within the two counties according to population. It shall be permissible under this act to have part of the county commission elected from districts wholly within the unorganized county, part of the county commission elected from districts located wholly within the organized county, and part of the county commission elected from districts containing parts of both the unorganized and organized counties.

Such reapportionment will allow all residents of organized counties to which unorganized counties are attached a vote equal to all other people voting for the county officials, in compliance with the equal election and equal protection provisions of the South Dakota Constitution.

Appellants also argue that they are denied their right to a free and equal election and equal protection because Indian residents of Todd County are allowed to vote in Tripp County elections, but are not subject to South Dakota election laws. This contention is without merit because the state election laws can be enforced in federal court under the Assimilative Crimes Act. 18 U.S.C. § 13 (1969).

We hold, therefore, that SDCL 7–17–1 does not deny the residents of Tripp County the right to a free and equal election and equal protection in violation of the South Dakota Constitution.

*Issue Four*

Finally, appellants allege that SDCL 7–17–1 is unconstitutional because it has consolidated the two counties without the consent of the residents therein. Article IX, Section 1 of the South Dakota Constitution provides in part:

The Legislature shall have plenary powers to organize and classify units of local government, except that any proposed change in county boundaries shall be submitted to the voters of each affected county at an election and be approved by a majority of those voting thereon in each county.

There is no evidence in the record that any change in county boundaries has taken place in this case. Rather appellants argue that the combined effect of the *Little Thunder* decision, *supra,* and SDCL 7–17–1 merged Tripp and Todd Counties in contravention of the consolidation procedures provided in SDCL 7–2. They cite no authority in support of this contention, and we do not agree that the counties have been consolidated. "Consolidation comprehends the 'combination into one unit' and therefore, 'to consolidate means something more than rearrange or redivide.'" *Independent District of Fairview v. Durland,* 45 Iowa 53, 56 (1876). Tripp and Todd Counties have not been combined into one unit. Each county has a separate budget. Tripp County officials keep separate accounts for the two counties. Taxes collected from the two counties are segregated. Todd County has its own highway department and Food Stamp Program. This separation of government functions is the nature of the attachment, not consolidation, as the legislature structured it, and these counties have stayed within the guidelines. Indeed all of the statutory attachment provisions were followed prior to the decision of *Little Thunder, supra,* and there has been no evidence of change since that decision. The right to participate in county elections does not work a consolidation of the two counties. They are still two separate units which are merely attached for administrative purposes. In *Williams v. Book,* 75 S.D. 173, 61 N.W.2d 290 (1953), this court stated that in the absence of constitutional limitations, legislative power over counties is plenary and supreme. As discussed earlier, the legislature had the power to attach

Todd County to Tripp County in the manner prescribed by the statutes. It provided a separate method for counties to consolidate. The consolidation statutes provide that in order for consolidation of two counties to take place the electors of the counties must petition the board of county commissioners to hold an election to determine the question of consolidation. SDCL 7–2–1. A majority of all votes cast at such election must be in favor of such consolidation for it to take place. SDCL 7–2–3. There can be no consolidation until there is an election. In this case no such election was held. The duly constituted officials have been acting within the powers given them by law, following the guidelines of the statutory attachment scheme. Even if the county officials had engaged in *ultra vires* activities, the remedy would not be to sever the two counties. The remedy would be against the officials for exceeding their authority. The *Little Thunder* decision, *supra,* has not added to or taken away from the powers of the county officials; it has merely served to define who the duly constituted officials are. We conclude, therefore, that SDCL 7–17–1 is not unconstitutional as having consolidated two counties without the consent of the residents therein.

*Issue Five*

 Pursuant to the above analysis appellants' request that we declare SDCL 7–17–1 unconstitutional is denied. Additionally, they ask that we enter an order severing Todd County from Tripp County and allowing Tripp County to cease the performance of the administrative and governmental functions of Todd County. In view of our holding that the attachment is constitutional, we would have no legal basis for severing the two counties by judicial fiat. Even if the attachment statute were unconstitutional, however, we agree with the conclusion of the trial court that the issue of severance is a political one, which is properly left within the cognizance of the South Dakota Legislature.

> The power to create municipal corporations, including the power to designate their boundaries and to increase or to decrease their corporate limits, is purely legislative—it is not a part either of the executive or judicial branches of the government. In the absence of constitutional restrictions the Legislature may exercise this power at will . . . *In Re Ruland,* 120 Kan. 42, 50, 242 P. 456, 460 (1926).

*See also Rowe v. Ray,* 120 Neb. 118, 231 N.W. 689 (1930); and *City of Hastings v. Hansen,* 44 Neb. 704, 63 N.W. 34 (1895). The power to decide whether these two counties should be severed lies with the legislature.

## CONCLUSION

The question of whether Intervenor Haley should be certified as the winner of the 1976 election for Tripp County Commissioner still remains. We have held that the districting of the counties at the time of his election was unconstitutional. The election of Marlow Newman by Tripp County voters only would also be deemed unconstitutional pursuant to *Little Thunder, supra.* We hold, therefore, that neither candidate should be certified to hold that office and the vacancy now existing shall be filled at the 1978 general election.

1977 South Dakota Session Laws, Chapter 60 (now SDCL 7–8–2.1), required the reapportionment of the board of county commissioners of Tripp County. If such reapportionment has been completed, candidates for the vacancy shall be nominated at the June, 1978, primary election, pursuant to SDCL 12–6. If, however, the reapportionment required by 1977 South Dakota Session Laws, Chapter 60, has not been completed, the reapportionment shall be completed forthwith and thereafter candidates for the vacancy shall be nominated pursuant to SDCL 7–8–9.

This cause is remanded to the circuit court, which shall retain jurisdiction to enter such necessary and proper orders hereafter as may be required to carry out the mandate of this court.

All the Justices concur.