#24063-a-JKM
**2006 SD 113**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA
* * * *

JERRY R. KRAFT, d/b/a KRAFT HARDWARE;
ROBERT S. TRUPE, MOREY W. TRUPE, and
MARTY L. TRUPE, as the members of BROTHERS
III, LLC, a South Dakota Limited Liability
Company; MID-STATE CAMPER SALES, INC.,
a South Dakota Corporation; T-M CONCRETE
CONSTRUCTION, INC., a South Dakota
Corporation; ROBERT C. VAN HOUTEN;
STEVEN A. VAN HOUTEN; RAPID
CONSTRUCTION, a Partnership; STACEY G.
ROSELLES; RHS, INC., a South Dakota
Corporation; ERDEAN A. OLSEN and VERNA J.
OLSEN, husband and wife; JEROME E.
TORKELSON and PATRICIA A. TORKELSON,
husband and wife; DAVID R. BOOZE and PATTY
L. BOOZE, husband and wife; and, with each and
Every such party acting individually and on behalf
of all persons respectively similarly situated,                Plaintiffs and Appellants,

    and

PHYLLIS A. COLBERT,                                            Plaintiff,

    v.

MEADE COUNTY, acting through its Board
of County Commissioners; SUMMERSET,
an unorganized municipality;                                   Defendants and Appellees,

    and

AMERICAN WEST COMMUNITIES, INC.,
a South Dakota Corporation; SUMMERSET
OWNERS ASSOCIATION, INC., a South
Dakota Corporation; and RONALD A. BAKER,
individually, and as an officer, director, and/or
shareholder of American West Communities,
Inc., and SUMMERSET OWNERS ASSOCIATION,
INC.,                                                          Defendants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
MEADE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE JEROME A. ECKRICH, III
Judge

* * * *

ARGUED ON NOVEMBER 28, 2006
OPINION FILED **12/27/06**

RONALD G. SCHMIDT of
Schmidt, Schroyer, Moreno,
  Lee & Bachand
Rapid City, South Dakota

JESSE SONDREAL
Meade County State's Attorney

TIMOTHY R. JOHNS
Meade County Deputy State's Attorney
Sturgis, South Dakota

Attorneys for appellants.

Attorneys for appellees.

MEIERHENRY, Justice

[¶1.] This case involves a constitutional challenge to the proposed incorporation of the municipality of Summerset. The plaintiffs in this action include individuals and corporate entities that own or otherwise claim an interest in property within the proposed municipal boundary [referred to collectively as "Kraft"]. The defendants involved in this appeal are Meade County and the unorganized municipality of Summerset [referred to collectively as "Meade County"]. On June 7, 2005, a majority of eligible voters voted to incorporate the municipality of Summerset. On August 19, 2005, Kraft filed a summons and complaint contesting the election based on the premise that the statutory scheme governing the organization, creation, and incorporation of a municipality violated due process and equal protection guarantees under Article VI, section 2 and section 18 of the South Dakota State Constitution. Shortly thereafter, Kraft filed a motion for an interlocutory injunction and ex parte temporary restraining order to enjoin the election of municipal officers set for August 30, 2005. The trial court denied Kraft's request for a temporary restraining order because of substantive and procedural defects but proceeded to hear Kraft's motion for interlocutory injunction, Kraft's summary judgment motion and Meade County's motions to dismiss. The trial court concluded that SDCL ch 9-3 did not violate due process or equal protection and dismissed all claims. Kraft appeals and presents the following issue:

### ISSUE

Whether the trial court erred in holding that SDCL ch 9-3 did not violate due process and equal protection under Article VI, section 2 and section 18 of South Dakota's Constitution.

**STANDARD OF REVIEW**

[¶2.]        Our standard of reviewing the constitutionality of statutes is well established.  "Statutes are presumed constitutional:  challengers bear the burden to prove beyond a reasonable doubt that a statute violates a constitutional provision."  Steinkruger v. Miller, 2000 SD 83, ¶8, 612 NW2d 591, 595.  "Constitutional interpretation is a question of law reviewable de novo."  *Id.*

**ANALYSIS**

[¶3.]        Kraft does not contest the regularity or validity of any aspect of Summerset's organization nor does he challenge the June 7, 2005 election.  Kraft argues that SDCL ch 9-3 is unconstitutional because the statutory scheme violates due process and equal protection guarantees of the South Dakota State Constitution.  The statutory scheme for the organization, creation, and incorporation of a municipality is found in SDCL ch 9-3 of South Dakota's Codified Laws.  The statutory scheme requires that a "survey, map, and census when completed and verified shall be left at some convenient place within such territory for a period of not less than thirty days for examination by those having an interest in such application."  SDCL 9-3-4.  Additionally, the application for incorporation must be signed by at least twenty-five percent of qualified voters within the proposed boundary and a majority of qualified voters must vote to incorporate the municipality.[1]  SDCL 9-3-5; SDCL 9-3-6.  Notice of the election must be published

---

1.        Generally, the requirements for incorporation are set forth as follows:

        (1) Prior to incorporation, persons making the application for the
            organization of a municipality shall "cause an accurate survey and map to
                                                                    (continued . . .)

"in all official newspapers at least once each week for two consecutive weeks."

SDCL 12-12-1.  It is the published notice with which Kraft takes issue.

*Article VI, Section 2 Due Process*

[¶4.]        Kraft claims that published notice of the election to incorporate

violated due process.  Article VI, section 2 of South Dakota's Constitution provides

in relevant part:  "No person shall be deprived of life, liberty or property without

due process of law. . . ."  Kraft claims that due process of law required personal or

formal notice to property owners whose lands were included in the boundaries of the

proposed municipality rather than the published notice designated by the statute.

Specifically, he argues that because the incorporator and Meade County knew the

names and addresses of those residing in the boundaries of the proposed

municipality as a result of completing a census required by SDCL 9-3-3, they should

have notified the landowners by first class letter or a phone call.[2]  Kraft relies on

_____

(. . . continued)
> be made of the territory intended to be embraced within the limits of such municipality."  SDCL 9-3-2.
> (2) An accurate census shall be taken of the landowners and the resident population in the proposed municipality.  SDCL 9-3-3.
> (3) The survey, map and census shall be posted at a convenient place within the proposed municipality for at least thirty days.  SDCL 9-3-4.
> (4) The application for incorporation must be in the form of a petition signed by not less than twenty-five percent of the qualified voters registered or owning land in the proposed municipality.  SDCL 9-3-5.
> (5) Following the petition, the County Commissioners shall make an order scheduling for an election to be conducted in accordance with SDCL Title 12.  SDCL 9-3-6.
> (6) A majority vote is required.  SDCL 9-3-10.
> (7) Title 12 requires, among other things, notice of elections.  SDCL 12-12-1.

2.        Kraft alleges that this lack of notice resulted in a loss of property rights including increased governmental regulation and taxation.  Specifically,

(continued . . .)

the United States Supreme Court's holding in *Mullane v. Central Hanover Bank & Trust Co.* to support his argument. 339 US 306, 70 SCt 652, 94 LEd 865 (1950). *Mullane*, which involved a judicial settlement of trust funds, held that notice by publication was insufficient in matters affecting private property where the owners of the property were known or easily ascertainable. *Id*. at 314, 70 SCt at 657. Kraft argues that since the property owners in this case were known, notice by publication was insufficient. Meade County, on the other hand, claims that *Mullane* does not control because it dealt with judicial proceedings not legislative acts. Meade County contends that due process has no application because the formation of a municipality is a legislative act which the legislature may exercise by its own fiat.

[¶5.]      We have determined that constitutional due process requirements do not apply to legislative acts. Tripp County v. State, 264 NW2d 213, 217 (SD 1978); *see also* Detroit Edison Company v. East China Township School Dist., No. 3, 378 F2d 225, 228 (6thCir 1967), *cert. denied*, 389 US 932, 88 SCt 296, 19 LEd2d 284 (1967) (holding that the alteration of a municipal boundary is a "legislative matter not justiciable under the due process clause or equal protection clauses of the Fourteenth Amendment."); Hammonds et. al. v. City of Corpus Christi, Texas, 343 F2d 162 (5thCir 1965) (affirming the district court's finding that the annexation of land by a city is of a "purely. . . political matter, entirely within the power of the

---

(. . . continued)
Kraft alleges that the plaintiffs have suffered financially from the imposition of a mill levy of $4.50 on all real property within the municipality which imposed a real property tax of $4.50 per $1000 of assessed value and the loss of a Meade County liquor license.

legislature of the State to regulate."). We have said that "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action." Matter of South Dakota Water Management Board, 351 NW2d 119, 123 (SD 1984) (citing Goldberg v. Kelly, 397 US 254, 90 SCt 1011, 25 LEd2d 287 (1970)).

[¶6.] Consequently, our first consideration is whether the nature of the governmental function of incorporating a municipality is legislative. We determined in *Tripp* that "[t]he power to create municipal corporations, . . . is purely legislative." *Tripp*, 264 NW2d at 221. Additionally, we said that "questions of public policy, convenience, and welfare related to any change in county boundaries are of purely legislative cognizance and any action in regard thereto does not come within the due process clauses of either the state or federal constitutions." *Tripp*, 264 NW2d at 217. We explained as follows:

> The power to create municipal corporations, including the power to designate their boundaries and to increase or to decrease their corporate limits, is purely legislative it is not part either of the executive or judicial branches of the government. In the absence of constitutional restrictions the legislature may exercise this power at will. . . .

*Id*. at 221 (considering whether attachment of unorganized county with organized county violated organized county residents' rights to due process). We recognized that the legislature's power to control counties and other political subdivisions "is unrestrained by requirements of due process." *Id*. at 217. Likewise, the legislature's broad power to establish and develop municipalities is unrestrained by due process requirements.

#24063

[¶7.]     Thus, Kraft's reliance on *Mullane* is misplaced because it did not involve legislative action.  The legislative act of creating, altering, or developing the boundaries of municipalities is not subject to the requirements of due process despite its injurious consequences.  *See* Hunter v. Pittsburgh, 207 US 161, 178-79, 28 SCt 40, 46-47, 52 LEd 151 (1907); *Tripp*, 267 NW2d at 221.  Thus, Kraft has failed to overcome the presumption of constitutional validity accorded to SDCL ch 9-3 et seq. under a due process challenge.

*Article VI, Section 18 Equal Protection & Privileges and Immunities*

[¶8.]     Kraft also argues that the statutory scheme in SDCL ch 9-3 is a violation of Equal Protection.  Article VI, section 18 of South Dakota's Constitution provides:  "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."  "[W]hen a statute has been called into question because of an alleged denial of equal protection of the laws, we employ our traditional two-part test."  *In re* Davis, 2004 SD 70, ¶5, 681 NW2d 452, 454 (citations and internal quotations omitted).

> First, we determine whether the statute creates arbitrary classifications among citizens. Second, if the classification does not involve a fundamental right or suspect group, we determine whether a rational relationship exists between a legitimate legislative purpose and the classifications created.

*Id*.  (citations omitted).  Kraft's argument does not address the two-part test.  Additionally, Kraft does not specifically identify an arbitrary classification within the statutes.

[¶9.]　　　　　Without identifying an arbitrary classification, Kraft generally complains of the effect of the municipal incorporation on the individual and corporate plaintiffs.  He argues that the defendants benefited from the incorporation while the plaintiffs suffered detriment.  He also complains that the plaintiffs did not have full knowledge and opportunity to participate in the pre-election process and decision concerning the municipal boundary nor the opportunity to vote.  Nevertheless, Kraft clearly recognizes that corporations have no right to vote, and the record indicates that all the eligible plaintiffs voted in the election.  Kraft's general complaints fail to establish an arbitrary classification created by statute under the first prong of the test.

[¶10.]　　　　Additionally, Kraft claims an equal protection violation because the municipal incorporation statutes do not provide notice equal to the notice provided in the municipal annexation statutes codified in SDCL ch 9-4.  Kraft argues that because landowners, corporations, and limited liability companies are entitled to "certified mail notice" when their land is being annexed by an existing city under SDCL ch 9-4, certified mail notice should also be required when their land is included in a proposed municipality.  Here also under the first prong of the two-part test, Kraft must first show that SDCL ch 9-3 creates arbitrary classifications among citizens.  *See In re* Davis, 2004 SD 70, ¶5, 680 NW2d at 454.  In other words, he must demonstrate that the statute does not apply equally to all people.  *See* State v. Krahwinkel, 2002 SD 160, ¶23, 656 NW2d 451, 461; Accounts Management Inc. v. Williams, 484 NW2d 297, 300 (SD 1992).

[¶11.] Kraft fails to satisfy the first prong because the differing notice requirements for annexation and incorporation are not dependent upon any classification of the citizenry. Rather, the required notice is dependent on whether the government action is one of incorporation or annexation. Annexation and incorporation are two distinct actions with separate and discrete procedures set forth by the legislature. These different procedures alone do not constitute a violation of equal protection. In the context of analyzing two Michigan statutes, which prescribed different procedures for condemning property based on the state's intended use of the property, the United States Supreme Court stated that "the equal protection clause [does not] exact uniformity of procedure. The Legislature may classify litigation and adopt one type of procedure for one class and a different type for another." Duhany v. Rogers, 281 US 362, 369, 50 SCt 299, 302, 74 LEd 904 (1930). Similarly, equal protection does not require the legislature to prescribe uniform procedures for two wholly distinct actions -- the annexation of land and the incorporation of a municipality. Furthermore, individually, chapters 9-3 and 9-4 apply generally and uniformly to all citizens within the State of South Dakota. "A law which is general and uniform throughout the state, and operates alike upon all persons or localities which come within the relations and circumstances provided for, is not objectionable to the Constitution as wanting in uniformity." Bon Homme County Farm Bureau v. Bd. of Com'rs of Bon Homme County, 53 SD 174, 220 NW 618, 621 (1928).

[¶12.] Because Kraft has not met his burden of showing that SDCL ch 9-3 creates arbitrary classifications, we need not address the second part of the test to

determine if there is a rational relationship between the legislative purpose and the classifications. Kraft's arguments regarding SDCL ch 9-3 essentially come down to a claim that the statutory scheme is unfair. Kraft, however, has failed to demonstrate beyond a reasonable doubt that SDCL ch 9-3 violates due process or equal protection under the South Dakota Constitution Article VI, section 18 and section 2. Because the statutory scheme does not violate constitutional requirements, Kraft's complaints are more appropriately addressed to the legislature.

[¶13.] We affirm.

[¶14.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.