Jake **LITTLE THUNDER** et al., Appellants,

v.

**STATE OF SOUTH DAKOTA** et al., Appellees.

No. 74–1967.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1975.

Decided June 27, 1975.

Rehearing and Rehearing En Banc Denied July 17, 1975.

Anita Remerowski, Art Bunce and Terry Pechota, South Dakota Legal Services, Mission, S. D., for appellants.

Earl Mettler, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before LAY, ROSS and WEBSTER, Circuit Judges.

LAY, Circuit Judge.

Plaintiffs, residents of unorganized counties in South Dakota, brought this class action contending South Dakota law prevented them from voting for county government officials in derogation of their right to equal protection of the law. The district court dismissed their complaint. We reverse and remand for the granting of appropriate injunctive relief.

The State of South Dakota is divided, by S.D.C.L. §§ 7–1–2 through 7–1–68 (1967), into sixty-seven county units. For purposes of county administration and government, these sixty-seven counties are divided into organized and unorganized counties. S.D.C.L. § 7–4–1 (1967) recognized the validity of every county government operating as such on the date of South Dakota's admission as a state. These became the first organized counties. Presumably all other counties were at that time designated as unorganized counties. A statutory method of organizing a county government, through petition and referendum, was also established and at the present time the only unorganized counties are those in which plaintiffs reside. These three counties are Todd, Washabaugh and Shannon.

Each organized county has a full complement of elected county officials whose task it is to administer the affairs of local government. They include county commissioners, judges, clerk of court, register of deeds, auditor, treasurer, sheriff, coroner and attorney. The unorganized counties, however, do not elect these officials for themselves but rather are attached to an adjoining county for purposes of government and administration.[1] The officials of the organized counties, under the provisions of S.D.C.L. §§ 7–17–3 (1967) and 7–17–5 (1974), administer the affairs of the attached unorganized counties and have all the powers and duties with regard to the attached county that they have in their own.[2] The residents of the unorganized

---

1. S.D.C.L. § 7–17–1 (1967) provides:

   Attachment of unorganized counties to adjacent counties.—The unorganized county of Shannon is attached to the county of Fall River, the unorganized county of Washabaugh is attached to the county of Jackson, and the unorganized county of Todd is attached to the county of Tripp, for administration of governmental and fiscal affairs, including all state, county, judicial, taxation, election, recording, canvassing, and foreclosure purposes, excepting in cases where the administration of any of said affairs is expressly otherwise provided by law.

2. S.D.C.L. § 7–17–3 (1967) provides:

   Powers of county commissioners acting for unorganized county.—The county commissioners of any organized county to which any unorganized county is attached shall have all of the jurisdiction, rights, powers, duties, and liabilities for the administration of the affairs of the unorganized county or counties which may be attached to said organized county as they may have in the organized county, excepting in cases where it is otherwise expressly provided by law.

   S.D.C.L. § 7–17–5 (1974) provides:

   Powers of county officers acting for unorganized county.—The county auditor, county treasurer, clerk of courts, register of deeds, county judge, state's attorney, sheriff, and county coroner of any organized county to which an unorganized county may be attached shall have all the jurisdiction, rights, powers, duties, and liabilities in connection

counties, such as plaintiffs, are not permitted to vote for the county officers in the organized county to which their county is attached.[3] Thus plaintiffs cannot vote for most of the elected county officials who govern them. They may vote only for school board members and highway officials. See S.D.C.L. §§ 12–23–3 and 13–8–1 (1974). They can, of course, vote for all state and national offices.

■ The state urges this restriction is justified on the premise that a reasonable residency requirement may restrict the right to vote. It contends that, since a majority of the residents of the unorganized counties are reservation Indians, they do not share the same interest in county government as the residents of the organized counties. The state also argues that the unorganized counties can organize at any time and thereby divest the organized county government of power and that this contingency justifies restriction of the franchise. The district court found there existed a *rational basis* supporting the restriction on plaintiffs' right to vote. We hold the district court applied the wrong legal standard in assessing the constitutionality of the state's action and, that there exists under this record *no compelling state interest* justifying the denial of plaintiffs' right to vote for their governing officials.

■ It is fundamental that the states have broad discretion to determine the extent of direct voter participation in local government. *Carrington v. Rash,* 380 U.S. 89, 91, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965); *Pope v. Williams,* 193 U.S. 621, 633, 24 S.Ct. 573, 48 L.Ed.

817 (1904). It is equally fundamental that once that extent is determined every citizen has a constitutionally protected right to participate in the electoral process on an equal basis with all other citizens. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); *Kramer v. Union Free School Dist.,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969). In an election of general interest, conditions, limitations or restrictions on the franchise, of any character, must meet a stringent test of justification. The Supreme Court has frequently recognized this fact in a variety of situations. Most recently, in *Hill v. Stone,* 421 U.S. 289, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975), Mr. Justice Marshall observed:

> The basic principle expressed in . . . [*Kramer v. Union Free School Dist.,* 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Cipriano v. City of Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970)] is that as long as the election in question is not one of special interest, any classification restricting the franchise on grounds other than residence, age, and citizenship cannot stand unless the district or State can demonstrate that the classification serves a *compelling state interest.* (Emphasis added.)

■ The state urges the limitation is justified since nothing more than a geographic residency requirement is imposed. This view is too simplistic. A state may, of course, impose geographic limits on the franchise, *Dunn, supra,* 405

with the affairs of the unorganized county as they now have in connection with the affairs of the organized county, excepting in cases where it is otherwise expressly provided by law.

**3.** S.D.C.L. § 12–23–2 (1967) provides:

Ballots provided for voting in unorganized counties—Candidates and questions listed on ballots.—The county auditor of the county to which any unorganized county is at-

tached shall at every state and national election held within this state provide printed ballots for each voting precinct in such unorganized county, in the same manner as for the voting precincts in the organized county; except that such ballots shall contain the names of candidates for state, national, and local officers of the unorganized county offices only, and only such questions as are submitted to the electors of the whole state.

U.S. at 343, 92 S.Ct. 995; *Carrington, supra,* 380 U.S. at 91, 85 S.Ct. 775, but those limits must bear a close relationship to the underlying interest of the parties affected in the results of the elective process. Geographic residency requirements are permissible when they are designed to insure that only voters who have a substantial interest in the outcome of elections will participate. *Evans v. Cornman,* 398 U.S. 419, 422, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970). Here, however, as plaintiffs urge, each of the unorganized counties and the organized county to which it is attached form a single unit of local government

> for administration of governmental and fiscal affairs, including all state, county, judicial, taxation, election, recording, canvassing, and foreclosure purposes, excepting in cases where the administration of said affairs is expressly otherwise provided by law. S.D.C.L. § 7–17–1 (1967).

We think it obvious the requirement of residency in the organized county places a special qualification on the right to vote which, in its application to residents of the attached unorganized counties, fails to result from a substantial difference in their interests in the election of county officials.

The decision of the Court in *Evans v. Cornman, supra,* is particularly persuasive here. In *Evans,* Maryland denied the residents of a federal enclave

(The National Institute of Health) the right to vote in state and local elections and defended its action by asserting that they did not have a "substantial" interest in the outcome of local elections because the enclave was governed by the federal government. The Supreme Court disagreed.[4] In doing so it alluded to the skepticism with which a court should approach the claim that certain persons lack a substantial interest in the electoral process for "[a]ll too often, lack of a 'substantial interest' might mean no more than a different interest, and '"[f]encing out" from the franchise a sector of the population because of the way they may vote is constitutionally impermissible.'" *Evans, supra,* at 423, 90 S.Ct. at 1755.

In the instant case residents of the unorganized counties possess a substantial interest in the choice of county officials since those officials govern their affairs. *Cf. Clark v. Town of Greenburgh,* 436 F.2d 770 (2nd Cir. 1970). In *Bailey v. Jones,* 81 S.D. 617, 139 N.W.2d 385 (1966), the Supreme Court of South Dakota summarized the various functions of the county board of commissioners:

> That our county boards have similar governmental powers seems obvious. Among them are the authority to enact rural and airport zoning regulations; construct and repair bridges and highways; designate through or main highways and the speed thereon;

---

4. The Court observed:

> Appellants do not deny that there are numerous and vital ways in which NIH residents are affected by electoral decisions. Thus, if elected representatives enact new state criminal laws or sanctions or make changes in those presently in effect, the changes apply equally to persons on NIH grounds. Under the Federal Assimilative Crimes Act, 18 U.S.C. § 13, 'acts not punishable by any enactment of Congress are punishable by the then effective laws of the State in which the enclave is situated.' *United States v. Sharpnack,* 355 U.S. 286, 287, 78 S.Ct. 291, 292, 2 L.Ed.2d 282 (1958). Further, appellees are as concerned with state spending and taxing decisions as other Maryland residents, for Congress has per-

> mitted the States to levy and collect their income, gasoline, sales, and use taxes—the major sources of state revenues—on federal enclaves. See 4 U.S.C. §§ 104–110. State unemployment laws and workmen's compensation laws likewise apply to persons who live and work in federal areas. See 26 U.S.C. § 3305(d); 40 U.S.C. § 290. Appellees are required to register their automobiles in Maryland and obtain drivers' permits and license plates from the State; they are subject to the process and jurisdiction of state courts; they themselves can resort to those courts in divorce and child adoption proceedings; and they send their children to Maryland public schools.

> *Id.* at 424, 90 S.Ct. at 1756.

establish and maintain public parks, county fairs, and free libraries; contribute to health centers; provide for assistance and deputies in county offices; generally supervise the fiscal affairs and levy taxes on all property in the county. Many of these powers are discretionary and some decisions may in practice be final. In effect they both manage and govern the counties. 139 N.W.2d at 388.

The register of deeds is required to record all deeds, mortgages, and other instruments required by law to be filed. S.D.C.L. § 7–9–1 (1967). The county auditor is responsible for maintaining the fiscal integrity of county government. S.D.C.L. § 7–10–1 (1967) *et seq.* The county treasurer is the collector of taxes. "It is his duty to receive all money belonging to the county from whatever source derived . . .." S.D.C.L. § 7–11–1 (1967). The sheriff is obligated to keep the peace. His powers and duties include the pursuit and apprehension of felons, and the execution of all writs, warrants and processes from any court. In the performance of these duties he is empowered to call to his aid "such persons or powers of his county as he may

deem necessary." S.D.C.L. § 7–12–1 (1967). The county coroner is obligated to certify deaths and conduct inquests when conditions warrant one. S.D.C.L. § 7–14–1 (1967) *et seq.* The county attorney conducts the legal affairs of the county, both civil and criminal, including such actions as those to compel child support, and to prosecute malfeasance of county officers. S.D.C.L. § 7–16–1 (1967) *et seq.*

Under the provisions of S.D.C.L. §§ 7–17–3 (1967) and 7–17–5 (1974) these officials exercise the same authority and are impressed with the same obligations towards the unorganized counties as towards their own organized county. The fact that plaintiffs are reservation Indians is not of great significance. While it is true that Todd, Washabaugh and Shannon counties lie totally within Indian reservations and that the state has limited jurisdiction over them, the effects of county government are not completely absent. Both Indians and non-Indians for example pay taxes on deeded land, whether within or without the reservation, and the tax rate is fixed by the county commissioners. S.D.C.L. § 10–12–10 (1967).[5] The county sheriff is obli-

---

5. S.D.C.L. § 10–12–10 (1967) provides:

Annual levy for general purposes of unorganized county—Purposes covered.—The board of county commissioners of each organized county to which any unorganized county is attached for state, judicial, or other purposes, shall at the time and in the manner specified in § 10–12–8 levy taxes on all taxable property assessable in such unorganized county, for the following purposes only:

(1) For all costs of criminal prosecutions arising in such unorganized county;

(2) For support of the mentally ill such an amount as may be due the state or county for the support of the mentally ill from such unorganized county, including expenses and costs in mental illness cases arising in such unorganized county;

(3) For all costs of general and primary elections, and assessment, extension, and collection of taxes in such unorganized counties;

(4) For additional salary for the state's attorney and county judge of the organized

county, in such amount as is or may hereafter be allowed by law;

(5) For the support and relief of the poor. S.D.C.L. § 10–12–11(1967) provides:

Special salary fund levy for unorganized county.—The county commissioners of any county, to which is attached, for judicial purposes, any unorganized county, may levy a tax on all the property in such unorganized county, for the purpose of raising funds necessary to pay any special assistants required in any of the county offices of such organized county by virtue of having such unorganized county attached thereto. The moneys so raised shall be placed in a fund known as a special salary fund and shall be paid out only for the salary of special assistants or deputies employed in any of the county offices; provided that in no event shall the sum so raised by the levy herein authorized exceed the sum of twenty-four hundred dollars per year.

gated to appoint a deputy sheriff to keep the peace in the unorganized counties. S.D.C.L. § 7–17–6 (1967). Indians and non-Indians living within the reservation record deeds and file documents just the same as their fellow citizens. We think it clear that officials of the organized county exercise substantial power over the affairs of individuals living in the unorganized counties.

The state's final attempt to justify disenfranchisement of plaintiffs is equally unavailing. Though residents of an unorganized county may choose to form an organized county or become attached to another county,[6] this eventuality does not vitiate their present interest in their present county government. In fact, we fail to perceive any force to this argument. The issue at stake is whether the residents of the unorganized counties presently have a voice in their government. The fact that they may by petition and referendum organize their county sometime in the future does not render their present interest contingent to an extent justifying disenfranchisement.

In conclusion, we find that although a state might constitutionally set up bona fide geographic lines as they relate to the organization of local government, they may not, through residency requirements, disenfranchise citizens who have a substantial interest in the choice of those who will function as their elected officials. Such unequal application of fundamental rights we find repugnant to the basic concept of representative government. Apropos here is Chief Justice Warren's observation that "[a]ny unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representa-

tive government." *Kramer, supra,* 395 U.S. at 626, 89 S.Ct. at 1889.

This cause is reversed and remanded with directions to grant prospectively[7] appropriate equitable relief.

---

6. The likelihood of Indians living on the reservations consisting of trust lands meeting the freeholding requirements of S.D.C.L. § 7–4–2 (1967) (one-half of the voters must be freeholders or bona fide entrymen under the homestead laws) in order to become an organized county is nil. As plaintiffs point out, requiring them to form organized counties before being eligible to vote is tantamount to the prohibited requirement that they be property owners. *Cf. City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

7. See *Hill v. Stone,* 421 U.S. 289, 301–302, 95 S.Ct. 1637, 44 L.Ed.2d 172 (1975).