In re UNITED STATES of America

v.

STATE OF SOUTH DAKOTA; Fall River County, South Dakota; Sherrill Dryden, in her official capacity as Fall River County Auditor.

No. CIV78–5018.

United States District Court, D. South Dakota.

July 2, 1980.

James W. Clute, Civil Rights Div., Dept. of Justice, Washington, D.C., for plaintiff.

Mark V. Meierhenry, Atty. Gen. for the State of South Dakota, Pierre, S.D., Kenneth Dewell, Fall River County Atty., Hot Springs, S.D., for defendants.

## MEMORANDUM OPINION

BOGUE, Chief Judge.

Under S.D.C.L. 7–17–1 the unorganized county of Shannon is attached to the organized county of Fall River,

> [f]or administration of governmental and fiscal affairs, including all state, county, judicial, taxation, election, recording, canvassing, and foreclosure purposes, excepting in cases where the administration of any of said affairs is expressly otherwise provided by law.

In 1976, Frank Rapp, a Shannon County resident, attempted to file a nominating petition in Fall River County to run for the position of county commissioner. Defendant Dryden, the Fall River County Auditor, refused to allow him to file the nominating petition because he was not a Fall River County resident. Because of defendants' position that Shannon County residents are not eligible to run for Fall River County offices, plaintiff brought this action alleging both a violation of the Voting Rights Act[1] and a violation of the Constitution's Equal Protection Clause.

This Court will first address the alleged violation of the Voting Rights Act. In regard to this issue, defendants argue that plaintiff has failed to establish that defendants' residency policy is racially motivated and thus plaintiff has no claim under 42 U.S.C. § 1971(a). Plaintiff contends that it need not prove racial motivation to invoke the sanctions contained in § 1971. Furthermore, plaintiff argues that even if proof of racial motivation is required, evidence of such has been presented.

Contrary to plaintiff's contention, this Court is of the opinion, and so finds, that defendants' policy is not racially motivated. *See Griggs v. Duke Power Company*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). Therefore, the only question remaining is whether proof of racial motivation is necessary in order to apply § 1971.

There is a split of authority in regard to this issue. Some courts have held that § 1971 applies to cases of non-racial discrimination. *See Ball v. Brown*, 450 F.Supp. 4 (N.D.Ohio 1977); *Frazier v. Callicutt*, 383 F.Supp. 15 (N.D.Miss.1974). However, a number of other courts have indicated that the Voting Rights Act is designed to protect only against racial discrimination. *See State of South Carolina v. Katzenbach*, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966); *O'Neal v. Gresham*, 519 F.2d 803 (4th Cir. 1975); *Ballas v. Symm*, 351 F.Supp. 876 (S.D.Tex.1972); *Brooks v. Nacrelli*, 331 F.Supp. 1350 (E.D.Pa.1971); *Gremillion v. Rinaudo*, 325 F.Supp. 375 (E.D.La.1971). In *Ballas, supra*, at 888, the court stated in speaking of § 1971(a)(2) that,

> Although this provision is broadly written, to argue that it applies without regard to race ignores the statute as a whole, its legislative history, and prior judicial construction. The Civil Rights Act of 1964 and Section 1971 of the Code clearly aim at eliminating racially motivated practices which restrict exercise of the elective franchise.

---

1. The sections allegedly violated are 42 U.S.C. § 1971(a)(1) and § 1971(a)(2)(A).

This Court finds the reasoning of the *Ballas* court persuasive and therefore holds that proof of racial discrimination is necessary under § 1971. Since no such racial discrimination has been established, defendants' motion for summary judgment as to the plaintiff's § 1971 claim, will be granted.

The next issue to be dealt with is whether defendants' policy violates the Equal Protection Clause of the United States Constitution. Under S.D.C.L. 12–23–2, residents of an unorganized county were not permitted to vote for county officials of the organized county to which the unorganized county was attached. In *Little Thunder v. State of South Dakota*, 518 F.2d 1253 (8th Cir. 1975), the statute was declared unconstitutional as a violation of the equal protection clause. Plaintiff argues that the same reasoning should apply in the case at bar and that citizens of unorganized Shannon County should be eligible to run for county offices in Fall River County.

Although plaintiff's argument might be quite persuasive if this Court were to look only at the *Little Thunder* decision, a subsequent decision by the Supreme Court seems to have altered the state of the law somewhat. In *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978), the Supreme Court was faced with a similar situation. Holt is an unincorporated community located on the outskirts of Tuscaloosa, Alabama. Under Alabama law Holt was subject to the police and sanitary regulations of Tuscaloosa. Holt was also subject to Tuscaloosa's criminal jurisdiction and the city's power to license businesses. Holt residents brought an action against Tuscaloosa claiming that its residents should be allowed to vote in Tuscaloosa city elections. The Supreme Court denied that Holt was entitled to relief. The court stated:

> From these and our other voting qualifications cases a common characteristic emerges: the challenged statute in each

case denied the franchise to individuals who were physically resident within the geographic boundaries of the governmental entity concerned. . . . No decision of this Court has extended the "one man, one vote" principle to individuals residing beyond the geographic confines of the governmental entity concerned, be it the State or its political subdivisions. On the contrary, our cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within its borders. *Holt*, 99 S.Ct. at 389.

The situation in the case at bar is closely akin to that existing in *Holt*. Shannon County lies outside the geographical boundaries of Fall River County and the two counties are separate entities. *See* S.D. C.L. 7–1–24, 7–1–57, and 7–18–1. In *Holt*, at page 391, footnote 8, the Supreme Court cites *Little Thunder* and distinguishes it by saying the situation is different where the incorporated territory "is exercising precisely the same governmental powers over residents of surrounding unincorporated territory as it does over those residing within its corporate limits." The record clearly indicates that Fall River County officials do not exercise "precisely the same governmental powers" over Shannon County residents as they do over their own residents. The fact that Shannon County is part of an Indian reservation and that all but fourteen percent of it is federal or Indian land, severely restricts the authority of Fall River County over Shannon County.[2] Furthermore, the State of South Dakota, not Fall River County, exercises considerable control over the affairs of Shannon County. In addition, Shannon County itself has control over various governmental functions.[3] It appears to this Court that the relationship between Fall River and Shannon Counties and that between Holt and Tuscaloosa, Alabama are quite similar and that the *Holt*

---

**2.** For example, Fall River County has no power to levy taxes on Indian land. Furthermore, the sheriff of Fall River County has no jurisdiction over crimes occurring in Indian country.

**3.** For instance, Shannon County residents elect their own highway board. S.D.C.L. 12–23–3.

**1352**

case should govern here. Therefore, it is the determination of this Court that plaintiff has failed to prove a violation of the equal protection clause and that defendants' motion for summary judgment as to this claim will also be granted.

The foregoing opinion constitutes this Court's findings of fact and conclusions of law.