**UNITED STATES of America,**
**Appellant,**

v.

**STATE OF SOUTH DAKOTA; Fall River County, South Dakota; Sherrill Dryden, in her official capacity as Fall River County Auditor, Appellees.**

No. 80–1588.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 13, 1980.

Decided Dec. 29, 1980.

As Amended Feb. 25, 1981.

---

James W. Clute, Atty., U. S. Dept. of Justice, Washington, D. C., for appellant.

Mark V. Meierhenry, Atty. Gen. of South Dakota, Pierre, S. D., for appellees.

Before HEANEY, BRIGHT and HENLEY, Circuit Judges.

HEANEY, Circuit Judge.

In April, 1976, Frank Rapp, an Indian and a resident of Shannon County, South Dakota, attempted to run for the office of county commissioner of Fall River and Shannon counties. The Fall River County Auditor refused to file his nominating petition on the advice of officials of Fall River County and the State Attorney General, who took the position that only residents of Fall River County could run for the office of county commissioner. As a consequence, Rapp's name did not appear on the ballot for the 1976 primary.

On April 4, 1978, the United States filed a complaint against the State of South Dakota, Fall River County and the auditor of Fall River County. The complaint alleged that the refusal of Fall River County to permit residents of Shannon County, 86.2 percent of whom are Indian, to run for elective county offices traditionally held by residents of Fall River County, violated 42 U.S.C. § 1971(a)(1), 42 U.S.C. § 1971(a)(2)(A), 42 U.S.C. § 1973, and the First, Fourteenth and Fifteenth Amendments.

The district court denied the request of the United States for declaratory and injunctive relief. *United States v. South Dakota*, 491 F.Supp. 1349 (D.S.D.). It held with respect to the statutory claims under 42 U.S.C. § 1971 that proof of intentional racial discrimination was necessary, and that the United States did not meet its burden of proof. The court rejected the Fourteenth Amendment claim, holding that *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978), overruled this Court's decision in *Little Thunder v. State of South Dakota*, 518 F.2d 1253 (8th Cir. 1975), on which the government's Fourteenth Amendment claim was based. The court did not address the government's claims under 42 U.S.C. § 1973 and the First and Fifteenth Amendments. We reverse.

## THE FACTS

This litigation stems from the unusual governmental structure of counties in the State of South Dakota. This Court described it in *Little Thunder v. State of South Dakota, supra,* 518 F.2d at 1254–1255 as follows:

The State of South Dakota is divided, by S.D.C.L. §§ 7–1–2 through 7–1–68 (1967), into sixty-seven county units. For purposes of county administration and government, these sixty-seven counties are divided into organized and unorganized counties. S.D.C.L. § 7–4–1 (1967) recognized the validity of every county government operating as such on the date of South Dakota's admission as a state. These became the first organized counties. Presumably all other counties were at that time designated as unorganized counties. A statutory method of organizing a county government, through peti-

tion and referendum, was also established and at the present time the only unorganized counties are * * * Todd, Washabaugh and Shannon.

Each organized county has a full complement of elected county officials whose task it is to administer the affairs of local government. They include county commissioners, judges, clerk of court, register of deeds, auditor, treasurer, sheriff, coroner and attorney. The unorganized counties, however, do not elect these officials for themselves but rather are attached to an adjoining county for purposes of government and administration. The officials of the organized counties, under the provisions of S.D.C.L. §§ 7–17–3 (1967) and 7–17–5 (1974), administer the affairs of the attached unorganized counties and have all the powers and duties with regard to the attached county that they have in their own. The residents of the unorganized counties, such as plaintiffs, are not permitted to vote for the county officers in the organized county to which their county is attached. Thus plaintiffs cannot vote for most of the elected county officials who govern them. They may vote only for school board members and highway officials. See S.D. C.L. §§ 12–23–3 and 13–8–1 (1974). They can, of course, vote for all state and national offices. [Footnotes omitted.]

■ In *Little Thunder v. State of South Dakota, supra,* we held the South Dakota

laws which prevented residents of unorganized counties from voting for county officers of the organized county to which their county was attached to be unconstitutional as violative of the Equal Protection Clause of the Fourteenth Amendment. This lawsuit arose in the wake of our decision in *Little Thunder,* when Fall River County officers and the State Attorney General took the position that only residents of Fall River County could become candidates for the office of county commissioner even though residents of Shannon County could vote for that office.

■ The United States contends, *inter alia,* that denial of the right of Shannon County residents to become candidates for Fall River County offices is in violation of the Equal Protection Clause of the Fourteenth Amendment. We agree and reverse the district court on the basis that the Equal Protection claim raised in this case [1] was implicitly decided in favor of the United States in the *Little Thunder* decision.[2]

*Little Thunder* established that residents of Shannon County have the right to vote for Fall River County offices. That right to vote may not be burdened by arbitrary restrictions. As the Supreme Court stated in *Evans v. Cornman,* 398 U.S. 419, 422, 90 S.Ct. 1752, 1754, 26 L.Ed.2d 370 (1970),

> there can be no doubt at this date that "once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protec-

---

1. The appellees contend in a footnote to their brief on appeal that the United States lacks standing to raise the Fourteenth Amendment claim. The government contends that the Attorney General has statutory authority to institute suit based on 42 U.S.C. §§ 1971 and 1973j(d). We concur. The Supreme Court in *Louisiana v. United States,* 380 U.S. 145, 151, 85 S.Ct. 817, 821, 13 L.Ed.2d 709 (1965), stated, "We have held this day in *United States v. Mississippi,* 380 U.S. 128, [85 S.Ct. 808, 13 L.Ed.2d 717] that the Attorney General has power to bring suit against a State and its officials to protect the voting rights of Negroes guaranteed by 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments." The voting rights of Indians are similarly protected and are the focus of both the Fourteenth and Fifteenth Amendment claims.

2. A general principle of judicial administration is that "dispositive issues of statutory and local law are to be treated before reaching constitutional issues." *Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 161 n.2, 99 S.Ct. 2701, 2704 n.2, 61 L.Ed.2d 450 (1979). In this case, statutory and constitutional issues are inseparable. The government presses only its claim under 42 U.S.C. § 1973 on this appeal, apparently on the basis that the claims under 42 U.S.C. § 1971 are substantially the same as the § 1973 claim. The Supreme Court has described § 1973 as nothing more than an elaboration upon the Fifteenth Amendment and has observed that its effect was to be no different from that of the Fifteenth Amendment. *City of Mobile, Ala. v. Bolden,* 446 U.S. 53, 100 S.Ct. 1490, 1496, 64 L.Ed.2d 47 (1980) (plurality opinion).

tion Clause of the Fourteenth Amendment." *Harper v. Virginia Board of Elections*, 383 U.S. 663, 665 [86 S.Ct. 1079, 1080, 16 L.Ed.2d 169] (1966); see *Williams v. Rhodes*, 393 U.S. 23, 29 [89 S.Ct. 5, 9, 21 L.Ed.2d 24] (1968). Moreover, the right to vote, as the citizen's link to his laws and government, is protective of all fundamental rights and privileges. *See Yick Wo v. Hopkins*, 118 U.S. 356, 370 [6 S.Ct. 1064, 1071, 30 L.Ed. 220] (1886); *Wesberry v. Sanders*, 376 U.S. 1, 17 [84 S.Ct. 526, 534, 11 L.Ed.2d 481] (1964).

The candidacy restriction at issue here clearly burdens the right to vote in that it restricts the field of candidates and thus limits the voters' freedom of choice. As the Supreme Court pointed out in *Powell v. McCormack*, 395 U.S. 486, 547, 89 S.Ct. 1944, 1977, 23 L.Ed.2d 491 (1969):

> A fundamental principle of our representative democracy is, in Hamilton's words, "that the people should choose whom they please to govern them." * * As Madison pointed out at the Convention, this principle is undermined as much by limiting whom the people can select as by limiting the franchise itself.

█ We next must determine the appropriate test with which to assess whether an Equal Protection violation has occurred here. As we stated in *McLain v. Meier*, 637 F.2d 1159, 1163 (1980), restrictions affecting the right to vote

> must cause a discrimination "of some substance" before the compelling state interest test is triggered. *American Party of Texas v. White*, 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974); *see also Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972); *McDonald v. Bd. of Election Comm'rs. of Chicago*, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969).

**3.** The whole of Shannon County is situated within the confines of the Pine Ridge Indian Reservation. The State of South Dakota and Fall River County officials have no jurisdiction over Indians residing on the Reservation.

When dealing with candidacy restrictions in particular, before close scrutiny is called for, the restriction in question must have "a real and appreciable impact on the exercise of the franchise." *Bullock v. Carter*, 405 U.S. 134, 144, 92 S.Ct. 849, 856, 31 L.Ed.2d 92 (1972).

█ Such an impact exists here. Approximately 43 percent of those eligible to vote for Fall River County offices reside in Shannon County. Those voters have been found by this Court to have sufficient interest in the affairs of Fall River and Shannon counties to have the right to vote. That right to vote is severely circumscribed by their inability to vote for candidates who live in the same county as they do. A huge segment of the population from which the pool of candidates is normally drawn has been cut off by the candidacy restriction under attack here. The ultimate effect of the candidacy restriction would be the denial of representation to an identifiable class of voters with a common interest.

Because of the impact of the candidacy restriction on the right to vote, we must look to whether the State and Fall River County offer sufficient justification for the restriction. The justification offered is that because the great majority of Shannon County voters reside on the Pine Ridge Indian Reservation and hence have little, if any, interest in the county government of either Shannon or Fall River County,[3] election of Shannon County residents would subject Fall River County residents to the possibility of a government dominated by persons who have a personal stake in the government insufficient to insure responsible exercise of their duties.

We have already held in *Little Thunder* that the residents of Shannon County have a sufficient interest in the election of Fall River County officials to be entitled to the right to vote for those officials. We described that interest as follows:

> However, approximately 14 percent of the population of Shannon County is non-Indian. Furthermore, land not held in trust for the Tribe, or for a member of the Tribe, is subject to state and local taxation.

residents of the unorganized counties possess a substantial interest in the choice of county officials since those officials govern their affairs.

*Little Thunder v. State of South Dakota, supra,* 518 F.2d at 1256. We are unable to accept the argument that a heightened level of interest is necessary before a Shannon County resident is entitled to run for office. The presumption that a candidate from Shannon County who possesses the substantial interest described above lacks a similar substantial interest in the effective governance of the two combined counties is not a reasonable one.[4] *Cf. Turner v. Fouche,* 396 U.S. 346, 364, 90 S.Ct. 532, 542, 24 L.Ed.2d 567 (1970); *Kramer v. Union Free School District,* 395 U.S. 621, 632, 89 S.Ct. 1886, 1892, 23 L.Ed.2d 583 (1969).

The appellees sought at the district court and in this Court to relitigate our decision in *Little Thunder.* The district court found that *Little Thunder* had been overruled by *Holt Civic Club v. Tuscaloosa, supra.* We disagree.

We do not read *Holt* as expressing blanket approval of the proposition that in all instances the right to vote does not extend beyond the geographical boundaries of the governmental unit with respect to which the right to vote is sought. The sole issue before the Court in *Holt* concerned the constitutionality of a statute which provided for the extraterritorial exercise of "certain limited powers" by municipalities and which was applied throughout the state as a whole. As Mr. Justice Stevens pointed out in his concurring opinion, *id.* 439 U.S. at 78, 99 S.Ct. at 394,

it may well be, as the opinion of the Court recognizes, *ante,* at 72–73, n.8 [99 S.Ct. at 391, n.8], that that scheme or another much like it might sometimes operate to deny the franchise to individuals who share the interests of their voting neighbors. No such question, however, is presented by this appeal from the decision of the three-judge District Court.

In footnote 8 of the *Holt* opinion, 439 U.S. at 72–73, 99 S.Ct. at 391, the Supreme Court specifically distinguished *Holt* and *Little Thunder* on the basis of the degree of governmental activity undertaken by Fall River County. The appellees now attempt to place *Little Thunder* under the *Holt* umbrella, arguing that Fall River County officials control an insignificant portion of the affairs of Shannon County. As we held in *Little Thunder,* officials of Fall River County exercise general governmental functions with respect to Fall River County and Shannon County. The fact that Shannon County exercises other governmental functions independent of Fall River County[5] does not detract from the significance of the actions of Fall River County officials in their governance of Shannon County.

We reverse and remand with the direction that the district court enter appropriate relief on the government's claims.[6]

4. Furthermore, the restriction paints with too broad a brush. Regardless of the merits of the argument that Shannon County residents residing on lands held in trust have an insufficient stake in the affairs of Fall River and Shannon counties to be considered responsible candidates, a significant number of the residents of Shannon County own land within the county which is not trust land and is, therefore, subject to state and local taxation. Those residents cannot be rejected as candidates for the justification offered.

5. Shannon County voters elect a school board and highway board. Fall River County voters also elect a school board, and Shannon County voters do not vote for those Fall River County School board members.

6. The South Dakota legislature enacted a law in 1979 (H.B. 1197, 54 Sess.) which repealed the provisions of the South Dakota Code relating to unorganized and organized counties. H.B. 1197 creates separately elected officials for each organized and unorganized county, but has not received preclearance pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. We were informed at oral argument that the Attorney General of the United States interposed an objection under § 1973c to H.B. 1197 on the ground that the government could not determine that the statute did not have a racially discriminatory effect. An action to determine the matter is now pending in the United States District Court for the District of Columbia. The Voting Rights Act of 1965 delegates to the Attorney General the authority and responsibility to protect the voting rights of all

citizens. In light of this delegation, it is incumbent upon the Attorney General to assist the

State of South Dakota in reaching a solution to the problem and not merely act as a "spoiler."