590 F.Supp. 731 (1984)
ST. LOUIS COUNTY, MO., Gene McNary, Co. Executive, James Kuenzle, Sandra Rea, Ernestine Beckman, Jan Costello, Gladys Wade, Plaintiffs,
v.
The CITY OF TOWN AND COUNTRY, The City of Eureka, The City of Creve Coeur, The City of St. Charles, The City of Overland, The City of Olivette, The Village of Twin Oaks, Richard King, Dir. of Revenue, State of Missouri, Defendants.
No. 83-2552C(5).
United States District Court, E.D. Missouri, E.D.
June 29, 1984.
*732 *733 Thomas W. Wehrle, Co. Counselor, Andrew J. Minardi, Assoc. Co. Counselor, Robert E. Britt, St. Louis, Mo., for plaintiffs.
J. Leonard Walther, Clayton, Mo., George A. Weible, City Atty., St. Charles, Mo., Robert L. Hartzog, Clayton, Mo., Gerard F. Hempstead, Jerome Wallach, St. Louis, Mo., Edward D. Robertson, Phillip K. Gebhardt, Jefferson City, Mo., Shulamith Simon, Robbye E. Hill, Thomas M. Utterback, St. Louis, Mo., for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
The matters before the Court are the joint motion to dismiss of the defendant municipalities, the motion to dismiss of defendant Richard King and the State of Missouri, the motion to dismiss of defendant City of Town and Country, and the motion to dismiss of defendant City of Eureka. All of the parties have submitted memoranda in support of their positions. The American Planning Association was also given leave to file an amicus curiae brief on behalf of the plaintiffs. This action will be dismissed because the complaint fails to state a claim upon which relief may be granted.
Plaintiff St. Louis County is a first-class county operating under a charter form of government pursuant to Article VI, Section 18 of the Missouri constitution. Within the County are ninety cities, towns and villages, which are referred to by the parties as the incorporated area. The remainder of the County is unincorporated. Because of its charter county status, the County government provides a number of municipal services within the unincorporated area. These services include police protection, health and community services, planning and zoning (including a comprehensive development plan), public works, parks and recreation, and road and highway planning, development and maintenance. The County is authorized to provide these services by its charter and by Article VI, Section 18(c) of the Missouri Constitution. Gene McNary, the County Executive, is also a plaintiff. The other five plaintiffs are registered voters who reside within the unincorporated area of the County. The plaintiffs are challenging the constitutionality of the election provisions in two Missouri annexation statutes, §§ 71.015 and 71.870, R.S.Mo.Cum.Supp.1983.
Among the defendants are seven municipalities, six of which are located within the County. These six include the City of Town and Country and the City of Eureka, the two defendant cities mentioned previously. The seventh municipality, St. Charles, is outside of and adjacent to the County. Each of these municipalities has annexed or is in the process of annexing unincorporated territory located within the County. Each of the six municipalities within the County has held or will hold an annexation election pursuant to § 71.870 (or a similar predecessor statute), which sets forth the procedure for annexation elections held by County municipalities. St. Charles also has held an annexation election, but did so pursuant to a different statute, § 71.015, as St. Charles is located outside the County. Section 71.870 applies only to elections held by municipalities within a first class charter county whose population exceeds 500,000; § 71.015 governs elections by municipalities in the rest of the state.
Although §§ 71.870 and 71.015 are somewhat different, they may be treated as identical for the purpose of this lawsuit, as the relevant provisions establish similar methods of holding annexation elections. In an annexation election, the annexation must be approved by a majority of those voting who reside in the annexing municipality and by a separate majority of those *734 voting who reside in the unincorporated territory to be annexed. See §§ 71.015, .870. These two groups of residents are the only individuals allowed to vote in the annexation election. Significantly, residents of the unincorporated area of the County are not allowed to vote, unless they are among the few who reside in the unincorporated territory to be annexed. The five plaintiff registered voters reside in the unincorporated area of the County, do not reside in any of the territories to be annexed, and therefore are not able to vote in any of the annexation elections. The plaintiffs contend that this disenfranchisement of the residents of the unincorporated area of the County is a denial of the right to vote in violation of the Equal Protection Clause of the Fourteenth Amendment.
Besides the municipalities, the State of Missouri and Richard King, Director of Revenue of the State of Missouri, are named as defendants. King is a defendant because he must distribute certain revenues pursuant to § 66.620, R.S.Mo.Cum. Supp.1983, and his distribution of those revenues is affected by the boundary changes resulting from the annexations.
This lawsuit follows the Missouri Supreme Court decision in City of Town and Country v. St. Louis County, 657 S.W.2d 598 (Mo. banc 1983). Missouri law provides for judicial review of municipal annexations. § 71.015, R.S.Mo.Cum.Supp.1983. City of Town and Country was such a judicial review proceeding. It concerned the same annexations by the City of Town and Country which are under attack in this lawsuit. Prior cases, such as City of Olivette v. Graeler, 369 S.W.2d 85 (Mo.1963), had held that the reviewing court must consider the interests of the County as a whole in determining the reasonableness of a proposed intra-County annexation. City of Town and Country significantly circumscribed this standard of review. In light of this, the plaintiffs believe that their interests are no longer adequately protected in state proceedings, so they seek enfranchisement of all residents of the unincorporated area in order to protect the interests of the County as a whole.

I.
Before reaching the merits of the plaintiffs' claims, several preliminary matters need to be addressed. First, the defendants contend that the County and McNary lack standing to sue. The main standing issue is that both plaintiffs are raising the constitutional rights of third parties: the plaintiffs' case is based on voting rights, but neither the County nor McNary is asserting a personal right to vote. The standing of the other five plaintiffs is not challenged, however, and these five voters meet all of the jurisdictional and prudential requirements of standing set forth in Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471-75, 102 S.Ct. 752, 757-60, 70 L.Ed.2d 700 (1982). As some of the plaintiffs have standing and this action is being dismissed in its entirety, it is unnecessary to decide if the County and McNary also have standing. Cf. Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 264 n. 9, 97 S.Ct. 555, 562 n. 9, 50 L.Ed.2d 450 (1977). If this action were not being dismissed, it would be necessary to decide if the County and McNary had standing in order to determine whether they could participate in further proceedings. See School District of Kansas City v. State of Missouri, 460 F.Supp. 421, 437 (W.D.Mo.1978), in which this was done.
The State of Missouri has also moved to dismiss on the separate ground that it is not a proper party defendant. The State will be dismissed because it is not subject to suit. The Eleventh Amendment bars suit directly against a state in federal court unless the state has consented to suit or Congress has abrogated state immunity by a statute enacted to enforce the Fourteenth Amendment. Pennhurst State School and Hospital v. Halderman, ___ U.S. ___, 104 S.Ct. 900, 906-908, 79 L.Ed.2d 67 (1984); Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). No consent has been shown. The *735 plaintiffs seem to argue that the State may be sued under 28 U.S.C. § 1331, but § 1331 does not override state immunity. Neither does 42 U.S.C. § 1983, another statute under which this suit is brought. Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Only "person[s]" may be sued under § 1983 and a state is not a "person". Id. (by implication); Seltzer v. Ashcroft, 675 F.2d 184, 185 (8th Cir.1982); Aubuchon v. State of Missouri, 631 F.2d 581 (8th Cir.1980), cert. denied, 450 U.S. 915, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981).
The defendants also contend that the claims of the County and McNary are barred by res judicata. As stated earlier, Missouri law provides for judicial review of annexations. State court proceedings have been held regarding the annexations of defendants City of Town and Country and City of Eureka. In those proceedings, the County unsuccessfully challenged these two cities' annexations on state law grounds, but did not raise the constitutional issues now litigated. The defendants argue that the failure to raise the constitutional questions, at the first opportunity, bars the claims of the County (and therefore also its Executive, McNary). But it is unnecessary to decide this point because the defendants do not contend that the other five plaintiffs' claims are barred by res judicata and this action will be dismissed in its entirety on other grounds.
By a separate motion to dismiss, the City of Town and Country argues that all of the plaintiffs' claims are barred by the applicable statute of limitations. There being no relevant federal statute of limitations, the applicable statute is the most appropriate one under Missouri law, Johnson v. Railway Express Agency, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975), which in turn is the statute governing actions most analogous to the plaintiffs' claim. See, e.g., Weston v. Bachman, 682 F.2d 202 (8th Cir.1982), cert. denied, ___ U.S. ___, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983); Garmon v. Foust, 668 F.2d 400 (8th Cir.1982) (en banc), cert. denied, 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982). The parties agree that for a voting rights claim against a municipality under 42 U.S.C. § 1983, the applicable statute is § 516.120(4), R.S.Mo.1978, which establishes a five year limitations period for "[a]n action for ... any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated."
The alleged constitutional violation here is a denial of the right to vote. Town and Country held its annexation election on April 5, 1977, at which time the plaintiffs' cause of action accrued. More than five years having passed since that date, the plaintiffs' claims against Town and Country are barred by the statute of limitations.
The defendant municipalities also argue that comity precludes this Court from hearing the plaintiffs' claims and that the plaintiffs should raise their claims in state court. Initially, the municipalities rely on Fair Assessment in Real Estate Association v. McNary, 454 U.S. 100, 102 S.Ct. 177, 70 L.Ed.2d 271 (1982). McNary held that a § 1983 action may not be used to challenge the validity of a state tax system in federal district court, at least if state remedies are adequate. 454 U.S. at 116, 102 S.Ct. at 186. This holding was based on the need to avoid federal disruption of state tax systems, the administration of which is a matter of special concern to state and local governments. Citing Hunter v. Pittsburgh, 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907), which established that states have considerable discretion in creating different political subdivisions, the defendant municipalities contend that annexations are also a matter of special concern to local governments, so McNary should be extended to preclude federal court suits challenging annexation voting laws.
The plaintiffs do not dispute that their constitutional claims could be raised in a Missouri court. Instead, they argue that McNary does not apply to their voting rights claim, and this contention is correct. McNary is based in part on longstanding restrictions on federal interference with state tax proceedings. In contrast, federal *736 courts have heard numerous voting rights claims. The plaintiffs are not attacking the validity of a tax, but are instead asserting a right to vote. Comity does not prevent them from bringing this suit. Cf. Town of Lockport v. Citizens for Community Action, 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 1051 n. 8, 51 L.Ed.2d 313 (1977).
With respect to the case of Hunter v. Pittsburgh, several cases have considered it in connection with a different issue, justiciability. Because Hunter holds that states have broad discretion in establishing local boundary lines, some have argued that challenges to annexation voting laws present a non-justiciable political question. But it is now well established that voting rights claims are justiciable. See, e.g., Town of Lockport, supra, at 264, 97 S.Ct. at 1051. Accordingly, courts have held that annexation voting rights claims are justiciable as well. See, e.g., Adams v. City of Colorado Springs, 308 F.Supp. 1397, 1400-1401 (D.Colo.1970), aff'd, 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (1970); Moorman v. Wood, 504 F.Supp. 467, 471-73 (E.D.Ky.1980). Cf. Baldwin v. City of Winston-Salem, 710 F.2d 132, 135 (4th Cir.1983). The plaintiffs' voting rights claims are justiciable.

II.

A.
Turning to the merits of the plaintiffs' Equal Protection claims, the first step is to determine the applicable standard of review. At issue here is a geographic residence voting restriction. Such a restriction generally need not "promote a compelling state interest in order to survive constitutional attack". Hill v. Stone, 421 U.S. 289, 294, 295, 297, 95 S.Ct. 1637, 1641, 1642, 1643, 44 L.Ed.2d 172 (1975). Thus, the defendants argue that the challenged statutes need only have a rational basis. The plaintiffs, however, assert that a compelling state interest must be shown for not allowing the residents of the unincorporated area of the County to vote in the annexation elections.
The plaintiffs rely primarily on Little Thunder v. State of South Dakota, 518 F.2d 1253 (8th Cir.1975), which involved the following statutory scheme. South Dakota was divided into organized and unorganized counties. Residents of each organized county voted for various county officials. These officials then administered the affairs of their organized county and any adjacent unorganized county. The officials performed a number of important governmental functions. Residents of the unorganized counties were not allowed to vote in the elections for county officials. The Court of Appeals held that this disenfranchisement violated the Equal Protection Clause of the Fourteenth Amendment. The residents of the unorganized counties had a right to vote in the elections for county officials because they had a "substantial interest" in the outcome of those elections. A compelling state interest was therefore necessary to justify the disenfranchisement of the residents of the unorganized counties. The holding of Little Thunder was reaffirmed in United States v. State of South Dakota, 636 F.2d 241, 244-45 (8th Cir.1980), cert. denied, 452 U.S. 939, 101 S.Ct. 3082, 69 L.Ed.2d 953 (1981).
The plaintiffs argue that all the residents of the unincorporated area of the County have substantial interests at stake in the annexation elections and therefore have a right to vote in those elections unless a compelling state interest is shown. The argument runs as follows. The defendant municipalities are annexing important areas of land within the County. These areas of land contain significant commercial, industrial and residential development. The areas are a major source of County government revenue. As each area is annexed, the County government loses the area's tax revenues, which instead are paid to the annexing municipality. Because of the cumulative effect of the annexations, the revenue loss will cause the County to curtail the municipal services it now provides to residents of the unincorporated area and will hinder the County's ability to function as a first-class charter county. Furthermore, *737 the annexations are haphazard and disrupt orderly planning and development in the County. For these reasons all residents of the unincorporated area of the County allegedly are substantially, directly and adversely affected by the defendant municipalities' annexations, thus entitling all to vote unless a compelling state interest to the contrary is shown.
But the circumstances here are quite different from those in Little Thunder. The disenfranchised County residents do not have "substantial interests" at stake, as that phrase was applied in Little Thunder. There, the disenfranchised residents of the unorganized counties possessed a substantial interest in county elections because the officials chosen in those elections governed their affairs. United States v. State of South Dakota, supra, 636 F.2d at 244-45, citing Little Thunder, supra, at 1256. Those officials "exercise[d] general governmental functions" over the disenfranchised individuals. 636 F.2d at 245.
In contrast, the annexation elections here have only a limited purpose: changing boundaries. The broad range of other governmental policy decisions will be made by officials chosen in other elections or will be determined by the results of other referenda  elections in which all County voters will participate on an equal basis. This is not a situation in which those who are allowed to vote are exercising general governmental powers over those who are disenfranchised. See Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 70, 72 n. 8, 99 S.Ct. 383, 389, 390 n. 8, 58 L.Ed.2d 292 (1978). Holt Civic Club held that a municipality may exercise some direct extraterritorial control over the residents of a surrounding area, even though those living in the surrounding area are not allowed to vote in municipal elections. But here, we do not even have a direct exercise of governmental authority by the voters over the non-voters. Those who are allowed to vote in the annexation elections are not exercising the type of control over non-voting County residents such as to give the latter a constitutional right to vote.
It is true, as the plaintiffs contend, that those who can vote on the annexations are making decisions which will affect those who are not allowed to vote. But impact alone is not enough to give the latter a right to vote. Just as the residents of a municipality may take actions which affect those residing outside the municipality, even though the latter are not allowed to vote, id. at 69, 99 S.Ct. at 389, so may the residents of the geographic area allowed to vote here approve annexations which affect those who reside in surrounding areas of the County.
The plaintiffs' argument implicitly recognizes that impact alone is insufficient to require enfranchisement. Presumably, all County residents are affected in varying degrees by annexations which allegedly weaken the County government. Nonetheless, the plaintiffs have not argued that all County residents have a right to vote; rather, they merely wish to extend the franchise to residents of the unincorporated area of the County. The residents of the many incorporated municipalities still would not be allowed to vote on any of the annexations, unless they happened to reside in an annexing municipality.
The preceding discussion establishes that it is not necessary to show a compelling state interest for limiting the franchise to residents of the annexing municipality and the area to be annexed. A compelling state interest is necessary only to justify the infringement of a fundamental right or the creation of a suspect classification. San Antonio School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Here the alleged fundamental right is the right to vote guaranteed by the Equal Protection Clause of the Fourteenth Amendment. But this right to vote is only a "right to participate in elections on an equal basis with other citizens in the jurisdiction." Id. at 34 n. 74, 93 S.Ct. at 1297 n. 74 (emphasis added). See also Holt Civic Club, supra, 439 U.S. at 66-70, 99 S.Ct. at 387-390. The jurisdiction chosen by the State of Missouri here consists of the annexing municipality and the *738 area to be annexed. That choice is valid under the principles set forth in Little Thunder and Holt Civic Club. Although the State could have chosen a more limited area for a jurisdiction, as suggested by the annexation cases discussed immediately below, or could have extended the franchise to a larger area, the fact remains that the State did not do so. Those who reside outside the jurisdiction here do not have constitutional right to vote, so a compelling state interest need not be shown for not allowing them to vote. Cf. Holt Civic Club, 439 U.S. at 66-70, 99 S.Ct. at 387-390 (rejecting the appellants' argument that a compelling state interest must be shown, because the appellants were non-residents and therefore did not have a right to vote.) No fundamental right being abridged, a compelling state interest need not be shown. The only remaining inquiry is whether or not the challenged statutes have a rational basis.
This conclusion is consistent with several federal court decisions that have dealt specifically with annexation elections. These decisions hold that a state may legitimately restrict voting in an annexation election to the residents of certain geographic areas. Such cases have exercised a low standard of review and have required no more than a rational basis for the state's choice of geographic areas allowed to vote. "As applied to annexation elections, ... the franchise may even be granted to one area and denied to another if a rational basis exists for so providing." Moorman v. Wood, supra, at 473, 474 n. 29 (franchise may be limited to residents of area to be annexed). See also Adams v. City of Colorado Springs, supra, at 1402-1404, aff'd, 399 U.S. 901, 90 S.Ct. 2197, 26 L.Ed.2d 555 (franchise may be limited to some areas to be annexed); Thompson v. Whitley, 344 F.Supp. 480 (E.D.N.C.1972) (same); Murphy v. Kansas City, 347 F.Supp. 837 (W.D. Mo.1972) (franchise may be limited to residents of annexing municipality). In effect, these cases imply that in an annexation election, the relevant jurisdiction consists of the geographic areas to which the state has chosen to extend the franchise, as long as there is a rational basis for the state's choice. Those residing outside that jurisdiction do not have a constitutional right to vote.
These annexation election cases have required no more than a rational basis for one or more of several reasons. First, under Hunter v. Pittsburgh, supra, states have considerable discretion in structuring political subdivisions, and annexation elections are part of the process for determining boundaries. Second, annexation elections serve only a limited purpose, the alteration of boundaries, thus leaving other governmental decisions to be made at other times. Third, geographic residence restrictions in annexation elections are not invidious discrimination (at least if a rational basis exists), for such restrictions are not based on an extraneous condition such as race, wealth, tax status and the like. These reasons are equally applicable here. Only a rational basis need be shown for limiting the franchise as §§ 71.015 and 71.870 do.

B.
For the challenged voting restrictions to have a rational basis, all that is required is that the restrictions "bear some rational relationship to a legitimate state purpose.... [T]he Equal Protection Clause is offended only if the state's classification rests on grounds wholly irrelevant to the achievement of the State's objective." Holt Civic Club, supra, 439 U.S. at 70-71, 99 S.Ct. at 390-391. The question here is whether "any state of facts reasonably may be conceived to justify" the limitations on the franchise in §§ 71.015 and 71.870. Salyer Land Co. v. Tulare Water District, 410 U.S. 719, 732, 93 S.Ct. 1224, 1231, 35 L.Ed.2d 659 (1973).
Such a rational basis exists. The Missouri General Assembly limited the franchise to residents of the annexing municipality and the area to be annexed because the legislature believed that residents of those areas would be most directly affected by any proposed annexation. City *739 of Town and Country v. St. Louis County, supra, at 605. It is a legitimate purpose for Missouri to distinguish between the different interests of the geographic areas involved in annexations. Cf. Town of Lockport, supra, 430 U.S. at 271, 97 S.Ct. at 1055; Moorman, supra, at 473 ("residence is a legitimate criterion"). The legislature could have rationally determined that residents of the annexing municipality and the area to be annexed are most directly affected by an annexation. The former will have to absorb new territory and provide services for it. The latter will become part of the municipality. In brief, the General Assembly has limited the franchise to those who will reside within the proposed city limits, and that is a rational classification under the lenient standards set forth in Holt Civic Club and Salyer Land Co., supra.
Notwithstanding this, the plaintiffs argue that §§ 71.015 and 71.870 are irrational for various reasons. The annexations are eroding the County tax base, thereby hindering the County's ability to provide services and threatening its future as a charter county. The annexations are destroying the existence of the unincorporated County area as a "community". The statutes encourage unplanned annexations which interfere with orderly development and planning and zoning. Essentially, the plaintiffs argue that the statutory voting scheme is irrational because it encourages irrational annexations.
But such arguments should be made to the General Assembly, not this Court. As the Supreme Court stated in Hunter v. Pittsburgh, supra,
"Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them.... The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state.... The state, therefore, at its pleasure, may modify or withdraw all such powers, ... expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all those respects the state is supreme, and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. Although the inhabitants and property owners may, by such changes, suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right, by contract or otherwise, in the unaltered or continued existence of the corporation or its powers, and there is nothing in the Federal Constitution which protects them from those injurious consequences. The power is in the state, and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it." 207 U.S. at 178-79, 28 S.Ct. at 46-47.
Although the broad language of Hunter has been qualified by later Supreme Court cases, it "continues to have substantial constitutional significance in emphasizing the extraordinarily wide latitude that states have in creating various types of political subdivisions and conferring authority upon them." Holt Civic Club, supra, 439 U.S. at 71, 99 S.Ct. at 390.
In order to determine whether the statutes are irrational because they encourage irrational annexations, it would be necessary to examine the proposed annexations one by one to determine which, if any, are irrational and which are not. Such an analysis would be improper under Hunter. See Baldwin v. City of Winston-Salem, supra, at 135 n. 3.
This entire controversy is well suited for legislative resolution. There are a number of conflicting interests and difficult problems involved in annexations within the County. Just as local governments need *740 "flexibility in municipal arrangements", Sailors v. Board of Education, 387 U.S. 105, 110, 87 S.Ct. 1549, 1553, 18 L.Ed.2d 650 (1967), so too Missouri needs flexibility in devising mechanisms to accommodate these various interests and to resolve the different problems. The plaintiffs, however, are asking for this Court to impose a single, rigid solution, thus depriving the General Assembly of the flexibility it needs.
And the Constitution does not require the solution urged by the plaintiffs. The residents of the unincorporated area of the County are not denied equal protection because they cannot vote in the annexation elections, for they do not have a right to vote and a rational basis exists for limiting the franchise as provided in §§ 71.015 and 71.870. This action will therefore be dismissed.
The defendant municipalities have also requested leave to file a motion for an award of attorneys' fees under 42 U.S.C. § 1988. Under that statute, an award of attorneys' fees to a prevailing defendant (as opposed to a prevailing plaintiff) is proper only if the "`[plaintiffs'] action was frivolous, unreasonable, or without foundation.'" R.W.T. v. Dalton, 712 F.2d 1225, 1235 (8th Cir.1983), cert. denied, ___ U.S. ___, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). That is not the case here. Each party will bear its own attorneys' fees.

ORDER
Pursuant to the Memorandum filed herein today,
IT IS HEREBY ORDERED that,
1) the defendant municipalities' joint motion to dismiss be and is GRANTED;
2) the separate motion to dismiss of defendant City of Town and Country be and is GRANTED;
3) the supplemental motion to dismiss of defendant City of Eureka be and is MOOT, it not being necessary to consider the issues raised by the motion;
4) the motion to dismiss of defendants Richard King and the State of Missouri be and is GRANTED;
5) the plaintiffs' motion to stay and motion to strike be and are MOOT.
IT IS FURTHER ORDERED that this action be and is dismissed with prejudice, each party to bear its own costs and attorneys' fees.